**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

JORGE RODRIGUEZ-RODRIGUEZ,
*Defendant-Appellee.*

No. 03-50146

D.C. No.
CR-02-02456-MJL

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JORGE RODRIGUEZ-RODRIGUEZ,
*Defendant-Appellant.*

No. 03-50147

D.C. No.
CR-02-02456-MJL

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
March 30, 2004—Pasadena, California

Filed April 20, 2004
Amended January 5, 2005

Before: Cynthia Holcomb Hall, Stephen S. Trott, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Trott

**COUNSEL**

Carol C. Lam, United States Attorney, Deborah J. Rhodes, Assistant U.S. Attorney (on the brief), Lawrence E. Spong, Assistant U.S. Attorney (at oral argument), United States Attorney's Office, San Diego, California, for the plaintiff-appellant/cross-appellee.

Steven F. Hubacheck and Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellee/cross-appellant.

**ORDER**

The Opinion filed April 20, 2004, and appearing at 364 F.3d 1142 (9th Cir. 2004) is amended as follows. Replace Section D with the following:

### D. Sentencing

The sentencing judge's application of the Sentencing Guidelines, including whether a prior conviction is a "crime of violence" or an "aggravated felony" for the purposes of U.S.S.G. § 2L1.2, is reviewed de novo. *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1049 (9th Cir. 2003).

The Guidelines provide that a sentence is enhanced by sixteen levels if an alien "previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A). For an aggravated felony, the enhancement is only eight levels. U.S.S.G. § 2L1.2(b)(1)(C). The application notes specifically provide that "burglary of a dwelling" is a "crime of violence." *See* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii).

The sentencing judge enhanced Rodriguez's sentence by eight levels, characterizing his prior burglary conviction as an "aggravated felony," rather than a "crime of violence." At the sentencing hearing, the defense argued that, under *Taylor v. United States*, California's generic burglary definition was too broad to apply the "crime of violence" guideline, and that Rodriguez's role as a lookout warranted application of the lesser "aggravated felony" enhancement. *See* 495 U.S. 575 (1990).

Although the application note specifically includes "burglary of a dwelling" in the definition of "crime of violence," *see* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii), a conviction for burglary of a dwelling must meet the generic, uniform definition of burglary to fall under the definition of "burglary of a dwelling." *United States v. Wenner*, 351 F.3d 969, 972 (9th Cir. 2003). Under *Taylor*, a state conviction meets the generic definition of burglary if the *burglary statute* "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. The definition of "burglary of a dwelling" is the same as the "*Taylor* definition of burglary, with the

narrowing qualification that the burglary occur in a dwelling." *Wenner*, 351 F.3d at 973.

*Taylor* sets forth a categorical approach, which "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. at 602. Using that approach, Rodriguez's California first degree burglary conviction does not constitute generic burglary because California Penal Code Sections 459 and 460 do not require "unlawful or unprivileged entry" for a burglary conviction. *See Taylor*, 495 U.S. at 599 ("A few States' burglary statutes, however, define burglary more broadly, *e.g.*, by eliminating the requirement that the entry be unlawful."); *see also People v. Frye*, 959 P.2d 183, 18 Cal. 4th 894, 954 (Cal. 1998) (holding that in California "one may be convicted of burglary even if he enters with consent").

Where, as here, the state burglary statute is broader than the *Taylor* definition of burglary, we employ a modified categorical approach, under which we consider whether the documentation or judicially noticeable facts show that the defendant was convicted of all elements of generic burglary under *Taylor*. *See Wenner*, 351 F.3d at 972.

Applying the modified categorical approach, we conclude that Rodriguez was convicted of a "burglary of a dwelling," triggering the sixteen level enhancement. Rodriguez pled guilty to "willfully and *unlawfully* enter[ing] a building with the intent to commit theft" where the building was an "inhabited dwelling house [or other residential building] . . . within the meaning of Penal Code section 460." By pleading guilty, Rodriguez admitted the factual allegations in the indictment. *See United States v. Velasco-Medina*, 305 F.3d 839, 852 (9th Cir. 2002);

*United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995). Because Rodriguez's conviction included the unlawful entry requirement absent in California's statutory definition of burglary, his conviction meets the definition of "burglary of a dwelling" under *Taylor* and is, therefore, a "crime of violence" under the Sentencing Guidelines. *See* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii); *see also Velasco-Medina*, 305 F.3d at 852-52 (holding that a California burglary conviction was burglary under a modified-categorical approach because Velasco-Medina pled guilty where the indictment alleged "unlawful" entry).

Rodriguez's alternate argument, that his limited role as a lookout warrants application of the lesser enhancement, also fails. The application notes specifically include convictions for aiding and abetting, conspiring, and attempting to commit the listed offenses in U.S.S.G. § 2L1.2(b)(1). U.S.S.G. § 2L1.2, cmt. n.5. Under *Taylor*, we look to the statutory definitions of the prior offenses and avoid "inquiries into the underlying facts that would essentially turn the sentencing hearings into minitrials on the issue of whether the prior crimes were committed." *United States v. Bonat*, 106 F.3d 1472, 1476 (9th Cir. 1997) (citing *Taylor*, 495 U.S. at 601).

Because the sentencing judge misapplied U.S.S.G. § 2L1.2(b)(1) in determining that Rodriguez's sentence should only be enhanced eight levels for an aggravated felony instead of sixteen levels for a crime of violence, we vacate Rodriguez's sentence and remand to the district court for resentencing in accordance with this opinion.

With these amendments, the panel as constituted above has voted to deny the petition for rehearing. Judges Trott and Cal-

lahan have voted to deny the petition for rehearing en banc, and Judge Hall so recommends.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on it. Fed. R. App. P. 35(b).

The petition for rehearing and the petition for rehearing en banc are DENIED.

---

## OPINION

TROTT, Circuit Judge:

Jorge Rodriguez-Rodriguez ("Rodriguez") was convicted of one count of illegal entry under 8 U.S.C. § 1326 and sentenced to twenty-one months in custody. The United States ("government") appeals the sentencing judge's application of United States Sentencing Guideline (U.S.S.G.) § 2L1.2(b) (1)(A), arguing that Rodriguez's prior burglary constitutes a "crime of violence." Rodriguez cross-appeals, arguing that (1) the government's failure to allege voluntary entry in the indictment renders it insufficient, (2) the government used statements that were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and (3) Rodriguez was denied his rights under the Confrontation Clause when the court denied his request to cross examine a witness regarding INS recordkeeping.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b). We affirm Rodriguez's conviction. We vacate Rodriguez's sentence and remand to the district court for resentencing consistent with this opinion.

## BACKGROUND

On June 21, 2002, Rodriguez was apprehended by border patrol. After admitting that he was a citizen and national of

Mexico illegally in the United States, he was arrested and transported to the Imperial Beach Border Patrol station. He was detained at the station, where he was fingerprinted and his photo and fingerprints were run against the INS records, which revealed that he had previously been deported.

At the station, Border Patrol Agent Overton read Rodriguez his *Miranda* rights in English and Spanish. After Rodriguez signed a *Miranda* waiver, witnessed by another agent, he responded to a number of questions. The agents noted that he had "needle tracks" on his arms, but observed that he was coherent, interactive, and normal. After he was questioned, Rodriguez underwent a routine health examination. The medical record indicates that Rodriguez was alert and oriented, but it did go on to diagnose him with "acute heroin withdrawal." Miguel Ahuage, the author of the report, testified that "acute" does not mean "severe," and that only patients undergoing mild or moderate withdrawal are permitted in the clinic where he works, while the more serious cases must be treated elsewhere.

Rodriguez was charged with being a previously deported alien found in the United States without the consent of the Attorney General under 8 U.S.C. § 1326.

Prior to trial, Rodriguez unsuccessfully moved to dismiss the action, claiming the indictment was insufficient because it failed to allege voluntary entry. Rodriguez also unsuccessfully moved to suppress the statements he made at the border patrol station, claiming that he could not have voluntarily waived his right to counsel under *Miranda*, because he was suffering from heroin withdrawal during the course of questioning. During the *Miranda* hearing, Rodriguez attempted to call an expert witness to testify to the implications of Rodriguez's suffering from heroin withdrawal and its effects on his ability to make a voluntary and intelligent waiver. The district court excluded the testimony as irrelevant. During trial, the government elicited testimony that INS records searches revealed no

applications for Rodriguez's entry. Rodriguez sought to cross-examine the witness regarding the deficiencies of INS record-keeping, but the trial court denied his request.

Rodriguez was convicted by a jury, and sentenced to twenty-one months custody followed by three years supervised release. The sentence imposed was based in part on a prior conviction. In 1991, Rodriguez had pleaded guilty to one count of first degree burglary of a residence, a felony.

## DISCUSSION

### A.   Failure to Allege Voluntary Entry

The sufficiency of an indictment is reviewed de novo. *United States v. Fleming*, 215 F.3d 930, 935 (9th Cir. 2000). Rodriguez argues that the government's failure to allege voluntary entry in his indictment renders it insufficient.[1]

[1] Rodriguez's argument is foreclosed by our holding in *United States v. Parga-Rosas*, 238 F.3d 1209 (9th Cir. 2001), *cert. denied*, 534 U.S. 942 (2001). In that case, we held that a "found in" indictment, like that in the instant case, is sufficient to allege unlawful conduct under § 1326. *Id.* at 1211 ("[T]here is no basis for reversing Parga-Rosas's conviction on the ground that the government failed to allege or prove a voluntary entry.")

[2] Rodriguez argues that *Parga-Rosas* was implicitly overruled by this Court's en banc decision in *United States v.*

---

[1]The indictment reads:

JORGE RODRIGUEZ-RODRIGUEZ, an alien, who had previously been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

*Buckland*, 289 F.3d 558 (9th Cir. 2002) (en banc). In *Buckland*, this Court held that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), drug type and quantity are material facts in a prosecution that must be "charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt." *Id.* at 568. Rodriguez argues that like drug type and quantity, voluntary entry is a material fact and must be charged in a § 1326 indictment. The *Buckland* decision directs us that the relevant inquiry in determining whether a fact or element must be charged in an indictment is whether it "may increase a defendant's exposure to penalties," regardless of its label. *Id.* at 566. Here, voluntary entry and being found in the United States are two alternative unlawful acts that are chargeable under § 1326. Voluntary entry need not even be proved in most cases. *See United States v. Pina-Jaime*, 332 F.3d 609, 612 (9th Cir. 2003) ("Today, we make clear that an alien does not have to enter the United States illegally to violate the 'found in' clause of 8 U.S.C. §1326 (a)(2).")). Because it is not necessary to prove or allege voluntary or unlawful entry in a "found in" conviction, and because voluntary entry makes no difference in a defendant's exposure to penalties, *Buckland* in no way overrules *Parga-Rosas*.

**[3]** The district court correctly determined that *Parga-Rosas* controls this question and denied Rodriguez's motion to dismiss for insufficiency of the indictment.

## B.  *Miranda* **Violation**

### 1.  *Denial of Rodriguez's Motion to Suppress*

We review de novo the district court's decision to admit or suppress statements that may have been obtained in violation of *Miranda*. *United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998). Underlying factual findings, including a district court's finding that a defendant knowingly and intelligently waived his *Miranda* rights, are reviewed for clear

error. *Id.*; *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). The district court denied Rodriguez's motion to suppress statements he alleged were taken in violation of *Miranda* because "there [was] no evidence whatsoever that [Rodriguez's waiver] was other than voluntary." Rodriguez argues that he could not voluntarily and intelligently waive his rights under *Miranda* because he was going through heroin withdrawal. The facts do not support his claim.

**[4]** The border agents read Rodriguez his *Miranda* rights in both English and Spanish. Rodriguez then signed a waiver and agreed to answer questions. Agent Overton, who read Rodriguez his rights, testified: "[Rodriguez] was coherent, sitting up facing me. He spoke and interacted. He seemed normal." Rodriguez's own witness, the physician assistant who examined him just after he spoke with the border agents, testified that his withdrawal could only have been "mild or moderate" and that the Rodriguez was "alert [and] oriented" at the time of the exam. Further, our case law supports the finding that individuals going through heroin withdrawal can voluntarily and intelligently waive their *Miranda* rights. *See*, *e.g.*, *United States v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000) ("Nor did Defendant's symptoms of heroin withdrawal render his statements involuntary."); *United States v. Kelley*, 953 F.2d 562, 565 (9th Cir. 1992) (holding that even though defendant "began to display physical signs of withdrawal," his waiver was voluntary because he "remained coherent and responsive, was aware of what was going on, and told the . . . agents that he was able to continue with questioning").

**[5]** On this record, the district court's determination that Rodriguez's waiver was voluntary is not clearly erroneous. Thus, the district court properly denied Rodriguez's motion to suppress the statements.

### 2. *Exclusion of Rodriguez's Expert Testimony*

Rodriguez argues also that the trial court improperly excluded his expert witness, who would have testified that the

symptoms of heroin withdrawal could have precluded his ability to voluntarily waive his rights under *Miranda*. The standard of review for a district court's decision to preclude expert testimony is abuse of discretion. *United States v. Castaneda*, 94 F.3d 592, 595 (9th Cir. 1996).

**[6]** The trial court excluded Rodriguez's expert because "his testimony would be irrelevant." The border agents and the physician assistant all testified as to Rodriguez's actual behavior and responsiveness at the relevant time. Because "the expert's testimony was general and did not relate to any conduct that was observed on the date of [Rodriguez's] arrest," it was not an abuse of discretion for the judge to find that it was irrelevant and would not aid the trier of fact. *Castaneda*, 94 F.3d at 595. The trial court's decision to exclude Rodriguez's expert testimony lay squarely within its discretion and will not be disturbed on appeal.

## C.   Confrontation Claims

Rodriguez argues that the district court's decision to curtail his cross-examination regarding INS recordkeeping procedures violated his confrontation rights guaranteed under the Sixth Amendment.

**[7]** This circuit has analyzed the issue of whether cross-examination infringes upon a defendant's confrontation rights under both abuse of discretion and de novo standards. *United States v. Bensimon*, 172 F.3d 1121, 1128 (1999) ("This court reviews *de novo* whether the limitation on cross-examination violated [a defendant's] right of confrontation. The district court, however, has considerable discretion in restricting cross-examination, and this court will find error only when that discretion has been abused." (internal citations omitted)); *United States v. Shabani*, 48 F.3d 401, 403 (9th Cir. 1995) ("We review judicial limits on cross-examination for abuse of discretion."). Both lines of cases provide that a limitation on cross-examination does not violate the Confrontation Clause

unless it limits relevant testimony and prejudices the defendant. *Bensimon*, 172 F.3d at 1128; *Shabani*, 48 F.3d at 403. Here, under either standard, Rodriguez's claim fails.

**[8]** Rodriguez asserts that the excluded testimony would have shown that (1) INS computers are not fully interactive with other federal agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States, and (4) the custodian never checked with the other federal agencies to inquire about documents relating to Rodriguez. None of that information is relevant on the facts of this case, because it is uncontested that Rodriguez never made any application to the INS or any other federal agency.

**[9]** Because Rodriguez's line of inquiry was not relevant to the facts of his case, the district court's restricting cross-examination did not violate the Confrontation Clause.

## D. Sentencing

The sentencing judge's application of the Sentencing Guidelines, including whether a prior conviction is a "crime of violence" or an "aggravated felony" for the purposes of U.S.S.G. § 2L1.2, is reviewed de novo. *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1049 (9th Cir. 2003).

**[10]** The Guidelines provide that a sentence is enhanced by sixteen levels if an alien "previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A). For an aggravated felony, the enhancement is only eight levels. U.S.S.G. § 2L1.2(b)(1)(C). The application notes specifically provide that "burglary of a dwelling" is a "crime of violence." *See* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii).

The sentencing judge enhanced Rodriguez's sentence by eight levels, characterizing his prior burglary conviction as an "aggravated felony," rather than a "crime of violence." At the sentencing hearing, the defense argued that, under *Taylor v. United States*, California's generic burglary definition was too broad to apply the "crime of violence" guideline, and that Rodriguez's role as a lookout warranted application of the lesser "aggravated felony" enhancement. *See* 495 U.S. 575 (1990).

**[11]** Although the application note specifically includes "burglary of a dwelling" in the definition of "crime of violence," *see* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii), a conviction for burglary of a dwelling must meet the generic, uniform definition of burglary to fall under the definition of "burglary of a dwelling." *United States v. Wenner*, 351 F.3d 969, 972 (9th Cir. 2003). Under *Taylor*, a state conviction meets the generic definition of burglary if the *burglary statute* "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. The definition of "burglary of a dwelling" is the same as the "*Taylor* definition of burglary, with the narrowing qualification that the burglary occur in a dwelling." *Wenner*, 351 F.3d at 973.

**[12]** *Taylor* sets forth a categorical approach, which "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. at 602. Using that approach, Rodriguez's California first degree burglary conviction does not constitute generic burglary because California Penal Code Sections 459 and 460 do not require "unlawful or unprivileged entry" for a burglary conviction. *See Taylor*, 495 U.S. at 599 ("A few States' burglary statutes, however, define burglary more broadly, *e.g.*, by eliminating the requirement that the entry be unlawful."); *see also People v. Frye*, 959 P.2d 183, 18 Cal. 4th 894, 954 (Cal. 1998) (holding that in California "one may be convicted of burglary even if he enters with consent").

Where, as here, the state burglary statute is broader than the *Taylor* definition of burglary, we employ a modified categorical approach, under which we consider whether the documentation or judicially noticeable facts show that the defendant was convicted of all elements of generic burglary under *Taylor*. *See Wenner*, 351 F.3d at 972.

**[13]** Applying the modified categorical approach, we conclude that Rodriguez was convicted of a "burglary of a dwelling," triggering the sixteen level enhancement. Rodriguez pled guilty to "willfully and *unlawfully* enter[ing] a building with the intent to commit theft" where the building was an "inhabited dwelling house [or other residential building] . . . within the meaning of Penal Code section 460." By pleading guilty, Rodriguez admitted the factual allegations in the indictment. *See United States v. Velasco-Medina*, 305 F.3d 839, 852 (9th Cir. 2002); *United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995). Because Rodriguez's conviction included the unlawful entry requirement absent in California's statutory definition of burglary, his conviction meets the definition of "burglary of a dwelling" under *Taylor* and is, therefore, a "crime of violence" under the Sentencing Guidelines. *See* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii); *see also Velasco-Medina*, 305 F.3d at 852-52 (holding that a California burglary conviction was burglary under a modified-categorical approach because Velasco-Medina pled guilty where the indictment alleged "unlawful" entry).

Rodriguez's alternate argument, that his limited role as a lookout warrants application of the lesser enhancement, also fails. The application notes specifically include convictions for aiding and abetting, conspiring, and attempting to commit the listed offenses in U.S.S.G. § 2L1.2(b)(1). U.S.S.G. § 2L1.2, cmt. n.5. Under *Taylor*, we look to the statutory definitions of the prior offenses and avoid "inquiries into the underlying facts that would essentially turn the sentencing hearings into mini-trials on the issue of whether the prior

crimes were committed." *United States v. Bonat*, 106 F.3d 1472, 1476 (9th Cir. 1997) (citing *Taylor*, 495 U.S. at 601).

**[14]** Because the sentencing judge misapplied U.S.S.G. § 2L1.2(b)(1) in determining that Rodriguez's sentence should only be enhanced eight levels for an aggravated felony instead of sixteen levels for a crime of violence, we vacate Rodriguez's sentence and remand to the district court for resentencing in accordance with this opinion.

**AFFIRMED in part, VACATED and REMANDED in part.**