**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

JOSE EMILIO CORTEZ-ARIAS,
                *Defendant-Appellant.*

No. 04-10184

D.C. No.
CR-03-00192-
HDM/VPC

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted
December 9, 2004—San Francisco, California

Filed April 18, 2005
Amended July 14, 2005
Second Amendment September 30, 2005

Before: Dorothy W. Nelson, Andrew J. Kleinfeld, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Robert B. Walker, Carson City, Nevada, for the appellant.

Daniel G. Bogden, United States Attorney, and Robert Don Gifford, Assistant United States Attorney, Reno, Nevada, for the appellee.

## ORDER

The opinion filed on April 18, 2005 and published at 403 F.3d 1111, as previously amended on July 14, 2005 at 415 F.3d 977, is AMENDED as follows.

Footnote 8 states:

Because Cortez-Arias waived all appellate rights except for the sole issue of whether his prior conviction was a "crime of violence," he is not entitled to relief under the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and our decision in *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). *See United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005).

Footnote 8 is deleted in its entirety and replaced with the following language:

As part of his plea agreement, Cortez-Arias waived the right to appeal his sentence, except to determine whether his earlier crimes were "crimes of violence" for purposes of the Sentencing Guidelines. As part of the delicate exchange of plea-bargaining, the United States agreed to recommend a two level downward departure and a sentence "at the low end of the guidelines." Despite this agreement, Cortez-Arias now urges that he is entitled to a limited remand pursuant to our decision in *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc), in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). We disagree.

As we said in *Ameline*, we may consider sua sponte whether *Booker* applies to a particular case where the parties do not raise a *Booker* issue in their briefs. *Ameline*, 409 F.3d at 1084 ("[e]ven where the briefs filed by the parties do not raise a *Booker* objection, we conclude that the issue may be raised and should be considered."). But here Cortez-Arias did not simply fail to raise a *Booker* objection in his briefing. Instead, he knowingly and voluntarily waived the right to appeal *every* aspect of his sentence, except whether his earlier crimes were "crimes of violence." In exchange for his guilty plea

and this waiver, Cortez-Arias received a promise of favorable sentencing recommendations from the United States. The record shows that the government upheld its end of the deal. The United States is entitled to the benefit of its bargain. *See Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985) ("[a]s a general rule, fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected."); *see also United States v. Johnston*, 199 F.3d 1015, 1010 (9th Cir. 1999) ("[p]lea agreements are typically construed according to the principles of contract law.").

Moreover, a favorable change in the law does not entitle a defendant to renege on a knowing and voluntary guilty plea. *Brady v. United States*, 397 U.S. 742, 757 (1970) ("a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); *United States v. Johnson*, 67 F.3d 200, 202 (9th Cir. 1995) ("[t]he fact that Johnson did not foresee the specific issue he now seeks to appeal does not place that issue outside the scope of his waiver."). We conclude that Cortez-Arias is bound by the terms of his plea agreement, and we decline to vitiate the terms of his bargained-for exchange with the government. The express and generally unrestricted waiver of appeal rights forecloses the objections now asserted by Cortez-Arias pursuant to *Booker* or *Ameline*. We join our sister circuits who have reached similar conclusions. *See United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) ("the right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement."); *United States v. Parsons*, 408 F.3d 519, 521-22 (8th Cir. 2005) (per curiam) (concluding that *Booker* did not invalidate a defendant's plea); *United States v.*

*Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) ("the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea."); *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) ("[a] valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance.").

**IT IS SO ORDERED.**

---

## OPINION

GOULD, Circuit Judge:

Jose Emilio Cortez-Arias appeals from the 46-month prison sentence that the district court imposed for illegal re-entry into the United States after being deported, in violation of 8 U.S.C. § 1326(a). The district court imposed a sixteen level increase in offense level pursuant to United States Sentencing Commission, *Guidelines Manual* (USSG), § 2L1.2(b)(1)(A), because it found that under our precedent in *United States v. Weinert*, 1 F.3d 889 (9th Cir. 1993) (per curiam), Cortez-Arias's prior conviction for shooting at an inhabited dwelling, in violation of California Penal Code section 246, was a conviction for a "crime of violence."

Cortez-Arias contends that *Weinert* is not controlling because it involved an interpretation of a section of the Sentencing Guidelines containing a broader definition of "crime of violence." Cortez-Arias further contends that his prior conviction was not for a "crime of violence" under § 2L1.2's categorical approach because California Penal Code section 246 prohibits shooting at a dwelling, whether occupied or not, and the commentary to § 2L1.2 defines a "crime of violence" with respect to "physical force *against the person of another*." USSG § 2L1.2 comment. (n.1(B)(iii)) (emphasis added).

We have jurisdiction pursuant to 28 U.S.C. § 1291, and although we disagree with the reasoning of the district court, we agree with its conclusion that shooting at an inhabited dwelling, in violation of California Penal Code section 246, is a "crime of violence" under § 2L1.2, and so we affirm.

## I

Cortez-Arias was arrested on October 14, 2003, for illegal reentry into the United States by a deported alien, in violation of 8 U.S.C. § 1326(a). On October 22, 2003, a federal grand jury indicted Cortez-Arias for this offense. Cortez-Arias pleaded guilty as charged on December 11, 2003.

The United States Probation Office's pre-sentence report recommended that, under USSG § 2L1.2(b)(1)(A)(ii),[1] the district court impose a sixteen level increase of the base offense level for illegal reentry[2] because Cortez-Arias previously was deported after being convicted for shooting at an inhabited dwelling, in violation of section 246 of the California Penal Code.[3] Cortez-Arias objected to the recommendation, arguing that a violation of California Penal Code section 246 was not a "crime of violence" under USSG § 2L1.2 because the California law does not require the presence of a person occupying the dwelling in order for the accused to be convicted, and so does not have as an element the use, attempted use, or threatened use of physical force against another person.

---

[1]USSG § 2L1.2(b)(1)(A)(ii) applies if "the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . a crime of violence."

[2]The base offense level for unlawfully entering or remaining in the United States is eight. USSG § 2L1.2(a).

[3]California Penal Code section 246 provides, in relevant part, that "[a]ny person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house . . . is guilty of a felony . . . . As used in this section, 'inhabited' means currently being used for dwelling purposes, whether occupied or not."

The district court, quoting our decision in *Weinert*, over-ruled Cortez-Arias's objection because it is "the risk inherent in the act of shooting at an inhabited building, as opposed to the presence of a victim that makes this particular offense a crime of violence." The district court applied a categorical approach, looking "to the statutory definition of the crime, not to the specific conduct that occasions a prior conviction," and concluded that, consistent with *Weinert*, California Penal Code section 246 "has as an element the use, attempted use, or threatened use of physical force against a person of another." Cortez-Arias timely appealed.

## II

We must first decide whether the district court properly concluded that *Weinert* controls the outcome of Cortez-Arias's sentencing challenge.[4] The district court held that our decision in *Weinert*, which interpreted a "crime of violence" under a different provision of the Guidelines, was dispositive of Cortez-Arias's challenge because the predicate offense addressed in *Weinert*, a violation of section 246 of the California Penal Code, is the same as the predicate offense committed by Cortez-Arias. We disagree with this reasoning.

**[1]** *Weinert* held that California Penal Code section 246 is a "crime of violence" under USSG § 4B1.2.[5] 1 F.3d at 890-91. Section 4B1.2(a) defined a crime of violence then as

---

[4]We review de novo this question of law relating to the applicability of the U.S. Sentencing Guidelines. *See United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1246 (9th Cir. 2003).

[5]This section defines terms, including "crime of violence," found in the "Career Offenders" provision, § 4B1.1 of the Guidelines. A "career offender" is one who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a); *see also id.* comment. (n.1) (indicating that, for the purposes of § 4B1.1, a "crime of violence" is defined in § 4B1.2).

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious risk of physical injury to another*.

(emphasis added). *Weinert* reasoned that, even though an inhabited dwelling need not be occupied when it is shot at, "it is the risk inherent in the act of shooting at an inhabited building, as opposed to the presence of a victim, that makes [California Penal Code section 246] a crime of violence." 1 F.3d at 891. In our view, this reasoning is most normally read to suggest that *Weinert*'s rule was based on § 4B1.2(a)'s final clause, emphasized above, which supports that shooting at an inhabited dwelling is a "crime of violence" because it "involves conduct that presents a serious risk of physical injury to another," whether or not a victim is present.[6]

**[2]** By contrast, Cortez-Arias received a sentencing enhancement under USSG § 2L1.2. The commentary to that section defines a "crime of violence" somewhat differently than does § 4B1.2(a); under the commentary to § 2L1.2 a "crime of violence" is defined to mean any of the following:

---

[6]*Weinert*'s citation to *United States v. Taylor*, 495 U.S. 575, 582-87 (1990) (discussing the Armed Career Criminal Act's, 18 U.S.C. § 924(e)(2)(B)(ii), amendment to include burglary and other crimes that involve "conduct that presents a serious risk of physical injury to another" as predicates for sentencing enhancements), and *United States v. Huffhines*, 967 F.2d 314, 320-21 (9th Cir. 1992) (holding that possession of a firearm silencer does not have as an element the use, attempted use, or threatened use of physical force against a person of another, but that such an offense "involves conduct that presents a serious risk of physical injury to another," and so is a "crime of violence" under § 4B1.2(a)(2)), reinforces the view that the *Weinert* rule rested significantly on § 4B1.2(a)'s catchall provision. *See* 1 F.3d at 891.

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

USSG § 2L1.2 comment. (n.1(B)(iii)). Neither this guideline nor its commentary in explicit words refer to crimes that involve "conduct that presents a serious risk of physical injury to another."

**[3]** Accordingly, we conclude that *Weinert* standing alone does not control the outcome of Cortez-Arias's appeal. *Weinert*'s holding that California Penal Code section 246 is a "crime of violence" because it involves conduct that presents a serious risk of physical injury to another does not necessarily resolve the question of whether the same offense is a "crime of violence" for purposes of USSG § 2L1.2.

### III

**[4]** Having determined that *Weinert* does not require us to affirm, we must squarely face and determine whether California Penal Code section 246 is a "crime of violence" allowing a sixteen level sentencing enhancement under USSG § 2L1.2(b)(1)(A).[7] We apply a categorical approach to determine whether a prior state law conviction is a predicate for a sentencing enhancement under the Guidelines. *United States v. Asberry*, 394 F.3d 712, 715 (9th Cir. 2005); *see also Taylor*

---

[7]We review de novo whether a prior conviction is a "crime of violence" under § 2L1.2 of the Sentencing Guidelines. *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 856 (9th Cir. 2005). Under our circuit's law we may of course "affirm on any ground supported by the record even if it differs from the rationale of the district court." *Nat'l Wildlife Fed'n v. United States Army Corps of Eng'rs*, 384 F.3d 1163, 1170 (9th Cir. 2004).

*v. United States*, 495 U.S. 575, 600-02 (1990). Thus, under § 2L1.2(b)(1)(A)(ii) we look to the prior offense, and not the underlying conduct, to determine whether that offense is a "crime of violence" allowing a sixteen level increase to the base offense level for unlawfully entering or remaining in the United States.[8]

---

[8]As part of his plea agreement, Cortez-Arias waived the right to appeal his sentence, except to determine whether his earlier crimes were "crimes of violence" for purposes of the Sentencing Guidelines. As part of the delicate exchange of plea-bargaining, the United States agreed to recommend a two level downward departure and a sentence "at the low end of the guidelines." Despite this agreement, Cortez-Arias now urges that he is entitled to a limited remand pursuant to our decision in *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc), in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). We disagree.

As we said in *Ameline*, we may consider sua sponte whether *Booker* applies to a particular case where the parties do not raise a *Booker* issue in their briefs. *Ameline*, 409 F.3d at 1084 ("[e]ven where the briefs filed by the parties do not raise a *Booker* objection, we conclude that the issue may be raised and should be considered."). But here Cortez-Arias did not simply fail to raise a *Booker* objection in his briefing. Instead, he knowingly and voluntarily waived the right to appeal *every* aspect of his sentence, except whether his earlier crimes were "crimes of violence." In exchange for his guilty plea and this waiver, Cortez-Arias received a promise of favorable sentencing recommendations from the United States. The record shows that the government upheld its end of the deal. The United States is entitled to the benefit of its bargain. *See Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985) ("[a]s a general rule, fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected."); *see also United States v. Johnston*, 199 F.3d 1015, 1010 (9th Cir. 1999) ("[p]lea agreements are typically construed according to the principles of contract law.").

Moreover, a favorable change in the law does not entitle a defendant to renege on a knowing and voluntary guilty plea. *Brady v. United States*, 397 U.S. 742, 757 (1970) ("a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); *United States v. Johnson*, 67 F.3d 200, 202 (9th Cir. 1995) ("[t]he fact that Johnson did not foresee the specific issue he now seeks to appeal does not place that issue outside the scope of his waiver."). We conclude that Cortez-Arias is bound by the terms of his plea agreement, and we decline

Our review of California law and the Sentencing Guidelines satisfies us that the district court correctly enhanced Cortez-Arias's sentence. We hold that California Penal Code section 246 is a "crime of violence" under the commentary to USSG § 2L1.2 because shooting at an inhabited dwelling necessarily involves the "threatened use of physical force against the person of another."

**[5]** The text of § 2L1.2 allows a sixteen level increase in offense level for a defendant who unlawfully enters the United States and who was previously deported after "a conviction for a felony that is . . . a crime of violence." We have held "that the force necessary to constitute a crime of violence [ ] must actually be violent in nature." *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172 (9th Cir. 2000) (quoting *Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir. 2000)) (alteration in original) (internal quotation marks omitted). The commentary to the Guidelines includes within its definition of a "crime of violence" state-law offenses that have "as an element the . . . threatened use of physical force against the person of another." USSG § 2L1.2 comment. (n.1(B)(iii)).

Before Cortez-Arias reentered this country illegally, he had been convicted of a felony for shooting at an inhabited dwelling, in violation of California Penal Code section 246. Cali-

---

to vitiate the terms of his bargained-for exchange with the government. The express and generally unrestricted waiver of appeal rights forecloses the objections now asserted by Cortez-Arias pursuant to *Booker* or *Ameline*. We join our sister circuits who have reached similar conclusions. *See United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) ("the right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement."); *United States v. Parsons*, 408 F.3d 519, 521-22 (8th Cir. 2005) (per curiam) (concluding that *Booker* did not invalidate a defendant's plea); *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) ("the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea."); *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) ("[a] valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance.").

fornia law provides in relevant part that "[a]ny person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house . . . is guilty of a felony . . . . As used in this section, 'inhabited' means currently being used for dwelling purposes, whether occupied or not." Cal. Penal Code § 246. California case law defines an "inhabited dwelling house" as "lived in." *People v. White*, 4 Cal. App. 4th 1299, 1303 (1992).

By its terms and as authoritatively construed, the California statute requires proof of three elements: (1) a malicious and willful state of mind, (2) the discharge of a firearm, (3) at an inhabited dwelling house, meaning a house in which a person currently and permanently lives. *See id.* at 1301 n.5, 1302-03. California state court interpretations of section 246 shed light on the statute's requirements.

**[6]** The California state courts have interpreted section 246 to proscribe an "act of violence committed against the person" because the statute requires that the defendant "*maliciously* and *willfully* discharge a firearm at an . . . *occupied* building," and the statute criminalizes acts "committed either 'with the intent to harm . . . or by means likely to cause harm' to one or more persons." *People v. Hall*, 83 Cal. App. 4th 1084, 1089-90 (2000). To hold that shooting at an inhabited dwelling is a crime of moral turpitude under California law, the state appellate court held that "the least adjudicated elements of Penal Code section 246 . . . *always* present a potential for violence." *White*, 4 Cal. App. 4th at 1305. Moreover, in holding that section 246 is a predicate felony offense for purposes of the State's felony-murder rule, the Supreme Court of California held that section 246 "involves a high probability that death will result and therefore is an inherently dangerous felony." *People v. Hansen*, 885 P.2d 1022, 1026-27 (Cal. 1994).

Cortez-Arias concedes that shooting at an inhabited dwelling involves the use of "physical force," but contends that since the California law considers a dwelling inhabited

"whether occupied or not," the state law does not have as an element the use of physical force "against the person of another." We reject appellant's contention because California law recognizes that the required elements of violation of section 246 "*always* present a potential for violence," *White*, 4 Cal. App. 4th at 1305, and it follows that there is always a "threatened use of physical force against the person of another."[9]

In the plain sense, "threatened" means "held out or presented as impending." *See* Oxford English Dictionary, *available at* www.oed.com. In the legal sense, a "threat" is a "communicated intent to inflict harm or loss" or an "indication of an approaching menace." *See* Black's Law Dictionary 1519 (8th ed. 2004). In the context of the Guidelines commentary,"threatened use of physical force against the person of another" must logically include acts that communicate to another person an intent to use physical force against that person and acts suggesting that physical force against that person may be impending.

**[7]** A person whose home is shot up by an instrument of deadly force, even though that person may have been absent at the time of the shooting, will surely feel threatened by the physical force that has intruded on his or her home. We hold that maliciously and willfully shooting a gun at a person's current permanent residence necessarily threatens the use of physical force against the resident, regardless of whether the resident is home at the time the shot is fired.

---

[9]Our conclusion that shooting at an inhabited dwelling is a crime of violence under USSG § 2L1.2 because it always threatens the use of force against another person, regardless of whether that person is in the dwelling when the gun is fired, is reinforced by that Guideline's listed offense of "burglary of a dwelling," which similarly does not require that a victim be present during commission of the offense to threaten force against that victim.

## IV

**[8]** We conclude that shooting at an inhabited dwelling, in violation of California Penal Code section 246, is a "crime of violence" under USSG § 2L1.2. Because Cortez-Arias unlawfully entered the United States after previously being convicted of a "crime of violence," the district court did not err in enhancing his sentence.

**AFFIRMED.**