**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.

LUIS NARVAEZ-GOMEZ, aka Manuel
Gomez-Feliz,
                    *Defendant-Appellant.*

No. 05-50501

D.C. No.
CR-04-02781-BTM

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
December 8, 2006—Pasadena, California

Filed June 6, 2007

Before: Robert R. Beezer, Kim McLane Wardlaw, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Beezer

**COUNSEL**

James Fife, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Roger W. Haines, Jr., and Michael J. Crowley, Assistant United States Attorneys, for the plaintiff-appellee.

---

**OPINION**

BEEZER, Circuit Judge:

Defendant Luis Narvaez-Gomez ("Gomez"), also known as Manuel Gomez-Felis, appeals his conviction and sentence for illegal re-entry after removal in violation of 8 U.S.C. § 1326. Gomez contends that the district court improperly (1) denied his motion to suppress post-*Miranda* statements, (2) excluded his cross-examination of government witnesses regarding official record-keeping, (3) imposed a 16-level enhancement for committing a prior crime of violence and (4) imposed a sentence greater than two years in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm the conviction, vacate the sentence and remand for re-sentencing.

I

Gomez was born in Mexico and was deported from the United States to Mexico numerous times between 1990 and 2004. Early on September 24, 2005, city police detained Gomez in a public park in California for violating a city ordinance that prohibits smoking in the park. Based on Gomez's responses to their questions and his lack of identifying information, the police called the United States Border Patrol for assistance in ascertaining Gomez's identity.

Agent Jill Badousek responded to the call and arrived in the park at approximately 9:45 a.m. She asked Gomez his name, place of birth and whether he had any documents to show his legal presence in the United States. Gomez responded that his name was Pedro Gomez, that he was born in Mexico and that he had a legal permanent resident card at his house. Badousek conducted a records check. The check showed no immigration documents for a "Pedro Gomez." Badousek told Gomez of the negative results and asked if he wanted to be taken to his house to retrieve immigration documents. Gomez admitted that he did not have any such documents.

Badousek arrested Gomez, handcuffed him and put him in the back seat of her vehicle. Without giving Gomez a *Miranda* warning, Badousek asked whether he had ever been arrested by Border Patrol and whether he had ever been deported. Gomez answered both questions in the affirmative. Badousek brought Gomez to the Border Patrol station, where he was placed in a holding cell.

At approximately 2:00 p.m., Border Patrol agent Mark Hopkins interviewed Gomez with Badousek present. Hopkins first informed Gomez that he would be processed criminally rather than administratively and that he faced potential criminal charges. Hopkins then administered a *Miranda* warning and confirmed that Gomez understood his rights. Gomez waived his rights and indicated that he wanted to make a statement without an attorney present.

Hopkins questioned Gomez regarding (1) name, citizenship and birthplace, (2) whether Gomez had previously been deported, (3) where Gomez had entered the United States before that deportation, (4) whether Gomez left the United States after being ordered deported, (5) whether Gomez ever applied for permission to enter the United States, (6) whether Gomez had any documentation allowing him to enter or remain in the United States and (7) when Gomez most recently entered the United States. Gomez stated that he was

a citizen of Mexico and had been previously deported. He admitted having no permission to enter the United States and no documentation allowing him to be in the United States.

Gomez was charged with violating 8 U.S.C. § 1326, which prohibits an alien from re-entering the United States after being deported or removed. He moved to suppress all of his statements to the Border Patrol agents. After an evidentiary hearing, the district court determined that only Gomez's statements to Badousek in her vehicle were inadmissible.

The government brought several motions in limine including a motion to prohibit references to document destruction and poor record-keeping by immigration officials. The district court granted the motion in part, allowing Gomez to question the completeness of his own immigration files. The court excluded cross-examination by Gomez suggesting that he had undocumented permission to enter the United States, unless he laid a foundation or made a proffer that he in fact applied for or received permission.

Gomez was convicted in March 2005 and sentenced on June 7, 2005. The district court applied a 16-level enhancement under the Sentencing Guidelines based on the finding that Gomez's prior conviction for shooting at an inhabited dwelling constituted a crime of violence under the guidelines. Gomez received a sentence of 96 months imprisonment. He timely appealed the judgment and sentence on June 15, 2005.

II

Gomez argues that the district court erred in denying his motion to suppress the statements he made after receiving *Miranda* warnings. We review de novo a district court's decision to admit statements that may have been obtained in violation of *Miranda*. *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 855 (9th Cir. 2005). Underlying factual findings are reviewed for clear error. *Id.*

**[1]** A defendant's post-*Miranda* statements may be inadmissible if law enforcement officers use a two-step interrogation process. *See Missouri v. Seibert*, 542 U.S. 600, 617 (2004). A two-step interrogation involves eliciting an unwarned confession, administering the *Miranda* warnings and obtaining a waiver of *Miranda* rights, and then eliciting a repeated confession. *See id.* at 609-10. If the interrogators deliberately employ the two-step strategy, the district court must suppress postwarning statements unless the interrogators take curative measures to apprise the defendant of his rights; if the two-step method is not deliberate, the postwarning statements are admissible if voluntarily made. *Id.* at 622 (Kennedy, J., concurring); *see also United States v. Williams*, 435 F.3d 1148, 1157-58 (9th Cir. 2006) (Justice Kennedy's concurrence in *Seibert* is the Court's holding because it is narrowest grounds with which majority of the Court would agree).

**[2]** Which appellate standard we use to review a district court's deliberateness finding is a matter of first impression. We determine that a deliberateness finding is appropriately reviewed as a factual finding for clear error. *Cf. United States v. Mashburn*, 406 F.3d 303, 306 (4th Cir. 2005) (in case involving pre- and postwarning statements, only voluntariness determination was reviewed de novo). Employing the clear error standard is consistent with our review of similar district court determinations as to credibility and deliberateness. *See United States v. Celestine*, 324 F.3d 1095, 1101 (9th Cir. 2003) (credibility determinations are reviewed for clear error); *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir. 1991) (reviewing "whether the defendant's mind was overborne— i.e., was his waiver knowing and intelligent—for clear error" (internal quotations omitted)); *United States v. Kimball*, 884 F.2d 1274, 1278 & n.3 (9th Cir. 1989) (whether government deliberately induced defendant to make incriminating statements is reviewed for clear error). Even if a deliberateness finding is not clearly erroneous, we review de novo the ultimate determination that a defendant's statements were voluntary. *Williams*, 435 F.3d at 1151, 1158.

**[3]** Deliberateness may be found if "objective evidence and any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning." *Id.* at 1158. Objective evidence includes "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements." *Id.* at 1159 (citing *Seibert*, 542 U.S. at 615).

**[4]** The district court concluded that agents Hopkins and Badousek did not deliberately employ the two-step method when interrogating Gomez.[1] The court properly considered the objective and subjective evidence of deliberateness including the informal setting and brief nature of Badousek's prewarning interrogation, Hopkins' involvement only during the postwarning interrogation, and the lack of any reference to the prewarning statements during the more comprehensive postwarning interrogation. The change in setting and time span of approximately four hours between statements also indicate a lack of deliberateness. *Cf. United States v. Carrizales-Toledo*, 454 F.3d 1142, 1152 (10th Cir. 2006) (moving defendant to different vehicle and waiting for other agents to arrive provided sufficient time delay and change in setting). We conclude that the district court correctly determined that Badousek and Hopkins did not deliberately employ a two-step interrogation.

---

[1]Gomez asserts that the district court did not make a factual finding as to deliberateness. He argues that the district court would have been "amazingly prescient" to make such a finding because our *Williams* decision did not issue until the following year. Contrary to Gomez's assertion, the district court explicitly found that "unlike the *Seibert* case, there is nothing here where the officers try to get statements from him without *Miranda* warnings and then somehow use it to obtain statements with *Miranda* warnings." The district court was also aware of the need to address deliberateness because the government referred to the Supreme Court's deliberateness rule from *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring), during the motions hearing.

Gomez does not dispute that he voluntarily made his post-warning statements. The district court properly denied Gomez's motion to suppress the statements.

## III

Gomez argues that the district court committed constitutional error by prohibiting him from cross-examining government witnesses regarding official record-keeping. We review de novo the question "[w]hether limitations on cross-examination are so severe as to violate the Confrontation Clause." *United States v. Shryock*, 342 F.3d 948, 979 (9th Cir. 2003) (citing *United States v. Adamson*, 291 F.3d 606, 612 (9th Cir. 2002)).

[5] When a defendant is charged under 8 U.S.C. § 1326, a district court may exclude irrelevant evidence of INS record-keeping procedures. *Rodriguez-Rodriguez*, 393 F.3d at 856. A defendant who does not assert that he applied for admission to the United States may not elicit testimony about record-keeping that suggests his application materials may have been lost. *See id.*

[6] Gomez argues that he did not have to claim he applied for admission in order to cross-examine government witnesses on record-keeping procedures because the prosecution "opened the door" on the issue. Gomez relies on Badousek's testimony that Gomez stated before his arrest that he had documentation of legal status at home. This argument ignores Badousek's further testimony that Gomez recanted the statement after the records check indicated no legal status. The district court provided ample opportunity for Gomez to make a proffer that he applied for admission or received permission to enter the United States. Gomez declined to make any proffer or otherwise put his legal status in dispute.

[7] We conclude that the district court properly excluded evidence of official record-keeping procedures as irrelevant.

IV

Gomez argues that the district court improperly applied a 16-level enhancement under the United States Sentencing Guidelines ("U.S.S.G.") based on the determination that his prior conviction for violating California Penal Code section 246 was a crime of violence under U.S.S.G. § 2L1.2. We agree. We review de novo a district court's determination that a prior conviction is a "crime of violence" under the sentencing guidelines. *Rodriguez-Rodriguez*, 393 F.3d at 856.

A

**[8]** The relevant Sentencing Guidelines definition of a "crime of violence" is a "federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, application note 1(B)(iii).

We first apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a prior conviction qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). *United States v. Gonzalez-Perez*, 472 F.3d 1158, 1160 (2007). In doing so, we "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor*, 495 U.S. at 602.

**[9]** California Penal Code section 246 provides that a "person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, . . . or inhabited camper . . . is guilty of a felony." We determined in *United States v. Lopez-Torres* that a violation of section 246 always involves a threatened use of physical force against the person of another and thus categorically qualifies as a crime of violence. *See* 443 F.3d 1182, 1184-85 (9th Cir. 2006). We must now decide whether our recent en banc opinion in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir.

2006) (en banc), abrogates *Lopez-Torres* such that section 246 is no longer a categorical crime of violence. We conclude that *Fernandez-Ruiz* does abrogate *Lopez-Torres*.

**[10]** *Fernandez-Ruiz* limits categorical crimes of violence to offenses committed through intentional use of force against the person of another rather than reckless or grossly negligent conduct. *See* 466 F.3d at 1132. Although *Fernandez-Ruiz* addressed a "crime of violence" under 18 U.S.C. § 16(a), the relevant definitions under § 16(a) and U.S.S.G. § 2L1.2 are identical.[2] *Compare* 18 U.S.C. § 16(a) (crime of violence includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person . . . of another") *with* U.S.S.G. § 2L1.2, application note 1(B)(iii) (crime of violence includes "any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another"). We conclude that the holding in *Fernandez-Ruiz* applies to the relevant "crime of violence" definition under § 2L1.2 of the sentencing guidelines.[3]

We next address whether California Penal Code section 246 is a categorical crime of violence in light of *Fernandez-Ruiz*. The language of section 246 does not expressly include

---

[2]The government argues that the definitions are different, but the cases it cites involved enumerated crimes in the "crime of violence" definition under § 2L1.2 that are not relevant here. *See, e.g.*, *United States v. Diaz-Argueta*, 447 F.3d 1167, 1170 (9th Cir. 2006) (rejecting argument that only aggravated felonies qualify as crimes of violence); *Valencia v. Gonzales*, 439 F.3d 1046, 1053 (9th Cir. 2006) (noting reference to statutory rape in § 2L1.2 commentary).

[3]The government argues for the opposite conclusion, relying on our decisions in *Lopez-Torres* and *United States v. Cortez-Arias*, 403 F.3d 1111 (9th Cir. 2005). We reject this argument. Those cases preceded the controlling en banc decision in *Fernandez-Ruiz* and did not address the intent element of section 246. *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) (panel may depart from circuit precedent when intervening higher authority has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

reckless conduct, but we also consider the interpretation of statutory language in judicial opinions to determine categorical reach. *See Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006).

**[11]** California courts characterize section 246 as a general intent crime. *See People v. Overman*, 24 Cal. Rptr. 3d 798, 806 (Cal. Ct. App. 2005). A violation includes discharging a firearm "in such close proximity to the target that [a defendant] shows a conscious indifference to the probable consequence that one or more [projectiles] will strike the target." *Id.* at 805. The "conscious indifference" intent element is equivalent to recklessness. *See Fernandez-Ruiz*, 466 F.3d at 1130 (recklessness is awareness and conscious disregard of risk of possible injury); *People v. Chavira*, 83 Cal. Rptr. 851, 855 (Cal. Ct. App. 1970) ("reckless disregard of probable consequences" is sufficient intent to constitute violation of section 246). The reckless act needs only be directed toward the dwelling or building; "it is not strictly necessary . . . that defendant's acts demonstrate a conscious disregard for the life and safety of others." *In re Daniel R.*, 24 Cal. Rptr. 2d 414, 418 (Cal. Ct. App. 1993). These state precedents demonstrate that a violation of section 246 may result from purely reckless conduct and does not categorically constitute a crime of violence.

B

**[12]** When an offense is not a categorical crime of violence, the sentencing court applies the "modified categorical approach" and "examine[s] the record for 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes.' " *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc) (quoting *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001)), *superseded on other grounds by* U.S.S.G. § 2L1.2, cmt. n.4 (2002). Where the prior conviction was based on a guilty plea, the sentencing

court's review is limited "to those documents 'made or used in adjudicating guilt' such as 'the terms of the charging document, the terms of a plea agreement or [the] transcript of [the] colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.' " *United States v. Martinez-Martinez*, 468 F.3d 604, 606-07 (9th Cir. 2006) (quoting *Shepard v. United States*, 544 U.S. 13, 20, 26 (2005)).

**[13]** Gomez argues that the district court erred in relying only on the abstract of judgment in determining that his prior offense was a crime of violence under the modified categorical approach. Although Gomez is correct, *see United States v. Navidad-Marcos*, 367 F.3d 903, 908-09 (9th Cir. 2004), the district court did not have the benefit of our *Fernandez-Ruiz* decision and did not conduct a complete modified categorical analysis. We remand for resentencing, particularly for the district court to determine under the modified categorical approach—consistent with *Shepard*, 544 U.S. at 20, 26— whether Gomez had the requisite intent when he committed his prior offense.

V

Gomez contends that the sentence imposed by the district court violated the Supreme Court's decision in *Apprendi* because the sentence was based on a factual finding that Gomez was removed subsequent to a conviction for an aggravated felony. This finding subjected Gomez to an increased maximum sentence of 20 years. *See* 8 U.S.C. § 1326(b)(2). Gomez argues that the date of his removal must be admitted by him or proved to a jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

**[14]** A district court may enhance a sentence under § 1326(b) based on a prior conviction even if the fact of conviction was not charged in the indictment, submitted to a jury

or proved beyond a reasonable doubt. *See Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998). Our precedent precludes Gomez's argument that recent Supreme Court decisions have overruled *Almendarez-Torres*. *See United States v. Covian-Sandoval*, 462 F.3d 1090, 1096-97 (9th Cir. 2006) (citing Ninth Circuit cases that rejected same argument). Gomez does not dispute that the fact of his removal in 1996 was proved to a jury. The district court permissibly found the fact of a prior conviction to that removal. *See United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1094 (9th Cir. 2007) ("The district court did not need to determine the date of Martinez's deportation because the jury necessarily found that Martinez was deported after his prior convictions."); *cf. Covian-Sandoval*, 462 F.3d at 1097-98 (district court impermissibly found fact of second, subsequent removal because defendant admitted only first, earlier removal).

**REVERSED** in part, **AFFIRMED** in part, and **REMANDED** for resentencing.