[No. A036435. First Dist., Div. Two. Nov. 23, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JENNY LEE SINGLETON, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication with the exception of part II.

COUNSEL

Allan A. Samson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McCARTY, J.*—

Defendant-appellant Jenny Lee Singleton was convicted by a jury of violating Health and Safety Code sections 11351 (possession for sale of cocaine) and 11352 (transportation of cocaine). She appeals, asserting that the trial court erred in its instructions to the jury and failed to give a cautionary admonition after improper closing argument by the prosecutor.

### BACKGROUND

At approximately 2 a.m. on April 8, 1985, Sergeant Gilbert Byers of the Concord Police Department noticed a Ford Granada with an expired license plate decal driving at an unusually slow rate of speed on Clayton Road near LaTour Lane. Byers could see that the car had two occupants. He activated his overhead flashing lights and pulled the car over to the side of the road.

The driver identified himself as William Bedell. As he approached Sergeant Byers, he appeared unsteady on his feet and his breath smelled of alcohol. Byers administered a field sobriety test, during which another patrolman, Officer Grimes, appeared on the scene.

* Retired judge of the superior court sitting under assigment by the Chairperson of the Judicial Council.

Byers concluded that Bedell had been driving under the influence of alcohol or drugs and placed him under arrest. Defendant thereupon exited from the vehicle and asked Byers to call a taxi, since she had been drinking.

Byers began searching the car for evidence of driving while intoxicated and recovered a loaded .25 caliber pistol and a red straw containing a white powdery substance. He asked defendant if she knew there was a loaded gun under the seat. She replied "It's mine, I put it there." Suspecting that the gun actually belonged to Bedell, Byers warned her that if the gun belonged to her she would be arrested. She continued to insist that it was hers. Officer Grimes thereupon placed defendant under arrest. During a pat search, Grimes felt a hard object inside defendant's boot. The package was found to contain 42 tightly packaged bindles of cocaine, with a street value of about $1,900. A bindle similar to those in the package was later recovered from Bedell's coat pocket when he was booked at the police station.

Defendant was charged in a four-count information with possession for sale of cocaine, transportation of cocaine, carrying a concealed weapon in a vehicle (Pen. Code, § 12025) and carrying a loaded firearm in public (Pen. Code, § 12031). With respect to counts one and two, it was alleged that defendant was armed with a firearm at the time of the commission of the offense within the meaning of the enhancement provisions of Penal Code section 12022, subdivision (a).

Both defendant and Bedell took the stand for the defense. She testified that she met Bedell, a man whom she used to date, in a bar that night around closing time. She invited him to a party she had planned to attend at a friend's house. He agreed and the couple left the bar in Bedell's car. As he was driving down Clayton Road, Bedell suddenly handed her a package and asked her to hide it. Without looking at the package, she placed it inside her boot. After seeing Bedell taken into custody by the police, she lied to the police by claiming that the gun belonged to her because she "figured he was in trouble" and she wanted to avoid more trouble.

Bedell testified that he found the cocaine on the ground in the parking lot as he left the bar with defendant. He sampled one of the bindles and put the baggie in his pocket. When he saw the police lights flashing, he became frightened and asked defendant to hide the baggie. He admitted that the .25 caliber pistol belonged to him and that he had stashed it under the seat earlier in the day.

The jury found defendant guilty on counts one (possession of cocaine for sale) and two (transportation of cocaine), but acquitted her of the weapons charges and found the firearm allegations to be untrue.

APPEAL

I.

Over defense counsel's objection, the court gave the jury instructions on aiding and abetting (CALJIC Nos. 3.00 and 3.01 (1984 rev.)). During closing argument, the prosecutor told the jurors that the sole purpose for the aiding and abetting instruction was to support the inference that defendant, while she may not have intended to sell cocaine herself, could have intended to aid an unidentified seller of cocaine (whom he called "Mr. X"), and therefore still have possessed the necessary intent to be guilty of possession for sale. The prosecutor made clear, however, that the instructions were *not* meant to suggest that the seller was Bedell, who, he opined, was the *"one person whom she was not aiding and abetting . . . ."* (Italics added.)

■ Defendant contends that the evidence was insufficient to support the prosecution's aiding and abetting theory and that the instructions therefore served to mislead and confuse the jury. We agree.

■ Trial courts are duty-bound to avoid instructions which are not justified by the facts of the case, since they have a natural tendency to overburden and confuse the jury. (*People* v. *Wade* (1959) 53 Cal.2d 322, 333 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Williams* (1961) 189 Cal.App.2d 254, 267 [11 Cal.Rptr. 142].)

■ In order to be guilty on a theory of aiding and abetting, a defendant must have (1) known the unlawful purpose of the perpetrator, (2) acted with the intent or purpose of committing, encouraging or facilitating the commission of the offense, and (3) by act or advice, aided, promoted, encouraged or instigated the commission of the crime. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 561 [199 Cal.Rptr. 60, 674 P.2d 1318]; CALJIC No. 3.01 (1984 rev.).) Factors relevant to a determination of whether defendant was guilty of aiding and abetting include: presence at the scene of the crime, companionship, and conduct before and after the offense. (*People* v. *Chagolla* (1983) 144 Cal.App.3d 422, 429 [193 Cal.Rptr. 711]; *In re Jessie L.* (1982) 131 Cal.App.3d 202, 217 [182 Cal.Rptr. 396].)

■ Contrary to the position taken by both the prosecutor and the Attorney General, we think that the evidence justified the giving of an aiding and abetting instruction based upon the theory that Bedell was the principal dealer of cocaine and that defendant aided and abetted him by hiding the contraband. The jury were entitled to infer that Bedell was a dealer by the quantity and tight packaging of the bindles; they also could

have believed defendant's testimony that she hid the package at Bedell's request, but disbelieved her claim that she did not know the nature of the contents.

Nevertheless, we can find no evidentiary foundation for accomplice liability hinged solely upon the prosecution's theory that defendant aided and abetted an anonymous "Mr. X." In cases which have upheld accomplice liability in narcotics transactions, there has always been evidence of a principal whom the defendant in some way knowingly assisted in the accomplishment of a criminal objective. (See, e.g., *People* v. *Gutierrez* (1962) 207 Cal.App.2d 529, 530-531 [24 Cal.Rptr. 441]; *People* v. *Powell* (1960) 187 Cal.App.2d 709, 711-713 [10 Cal.Rptr. 116]; *People* v. *Esparza* (1960) 182 Cal.App.2d 656, 657-658 [6 Cal.Rptr. 568].) We have found no case, however, and none has been cited to us, where guilt of aiding and abetting has been upheld despite the total absence of any proof of a perpetrator. We cannot accept the notion that a defendant's conviction can rest solely on a theory of aiding, promoting, encouraging, or instigating a principal created from the whole cloth of pure speculation. Indeed, we find it puzzling that the People should simultaneously admit that there was insufficient evidence to convict defendant on the basis that she was *Bedell's* accomplice, but maintain that there was sufficient proof that she aided a phantom figure about whom the jury had heard no evidence. The theory of accomplice liability offered by the People did not justify the giving of CALJIC Nos. 3.00 and 3.01.

The record compels the conclusion that the erroneous instructions prejudiced defendant as to the conviction of count one, possession for sale. ■ Where accomplice instructions are clearly inapplicable to the case, the error is ordinarily not prejudicial, since it can be reasonably assumed that the jury ignored them. (See *People* v. *Hairgrove* (1971) 18 Cal.App.3d 606, 608-609 [96 Cal.Rptr. 142].)

■ The instant record, however, precludes any such assumption. The jury came back several times after retiring for deliberations. On the first occasion they informed the judge that they were having difficulty agreeing as to count one, and specifically the element of intent; thereupon, the judge twice reread to them the elements of count one. On the second occasion, the jurors informed the court that they "deadlocked at 7-5 with no one give way at all" (*sic*) on the first count. The third time they stated that they were still at seven-to-five and requested "more detail" on how aiding and abetting related to the charge, prompting the judge to reread the aiding and abetting instructions along with the instructions of the elements of the crime. When inquiry was made as to whether they needed further clarification, one juror voiced continued uncertainty over how aiding and abetting relates to the

intent and "how someone else can aid and [a]bet someone else[']s intent . . . ." The judge responded by again *rereading the aiding and abetting instructions*. When the jury next returned for further instructions, it was apparent that they had already resolved defendant's guilt as to the possession for sale charge.

Thus, there is no doubt that the aiding and abetting instructions played a key role in the jury's deliberations (and consequently the conviction) on count one. It matters not that there was substantial evidence to convict defendant as a principal. ■ Where the prosecution argues guilt based upon alternative theories, some of which are permissible and others impermissible and the general verdict does not indicate which theory was accepted, the conviction may not stand. (*People* v. *Edwards* (1985) 39 Cal.3d 107, 117 & fn. 11 [216 Cal.Rptr. 397, 702 P.2d 555]; *People* v. *Green* (1980) 27 Cal.3d 1, 69-71 [164 Cal.Rptr. 1, 609 P.2d 468]; *People* v. *Olmedo* (1985) 167 Cal.App.3d 1085, 1094 [213 Cal.Rptr. 742].) A fortiori, a reversal must issue where the dialogue between the court and the jurors shows that the conviction was almost certainly based upon the impermissible theory.

■ The error in instructions does not affect the validity of the conviction on count two, transportation of cocaine. The theory of accomplice liability came into play on the possession for sale charge if the jury found that defendant knew that the package contained cocaine but did not intend to sell it *herself*. However, the transportation charge (Health & Saf. Code, § 11352) required merely that defendant know the narcotic nature of the substance being transported, sold or given away. (CALJIC No. 12.01 (1979 rev.).) Defendant admitted that she transported the baggie, but denied that she knew what was in it. Once the jury resolved defendant's mental state with respect to the nature of the contents adversely to her, guilt was established. Whether or not she was also aiding and abetting someone else was irrelevant. Consequently, the prosecutor informed the jury at the beginning of his closing argument that the aiding and abetting instructions were only offered with respect to the first count. As to count two, the instructional error was harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)[1]

## II.*

· · · · · · · · · · · · · · · · · · · · ·

[1] Defendant was granted probation, with sentence on count one "stayed pending successful completion of sentence meted out . . . for count two." Hence, the reversal on count one is of no immediate consequence.

* See footnote *ante,* page 488.

## DISPOSITION

The judgment as to count one is reversed. In all other respects, the judgment is affirmed.

Kline, P. J., and Benson, J., concurred.