# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JUAN JOSE VIDAL,
          *Defendant-Appellant.*

No. 04-50185

D.C. No.
CR-03-01178-1-
JTM

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted February 9, 2005
Submission Vacated and Deferred February 22, 2005
Resubmitted October 24, 2005
Pasadena, California

Filed October 24, 2005

Before: James R. Browning, Frank J. Magill,* and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Rymer;
Partial Concurrence and Partial Dissent by Judge Browning

---

*The Honorable Frank J. Magill, Senior Circuit Judge for the Eighth
Circuit, sitting by designation.

**COUNSEL**

Siri Shetty, San Diego, California, for the defendant-appellant.

Mark R. Rehe, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

RYMER, Circuit Judge:

Juan Jose Vidal appeals from his sentence for being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. Vidal challenges the eight-level enhancement to his sentence resulting from the district court's conclusion that his conviction for the unlawful taking of a vehicle, in violation of California Vehicle Code § 10851(a), constitutes an aggravated felony under United States Sentencing Guideline § 2L1.2(b)(1)(C). He also argues that *Blakely v. Washington*, 124 S. Ct. 2531 (2004), precludes resort to the modified categorical approach to determine whether the defendant was previously convicted of conduct that would constitute an aggravated felony under federal law. Finally, in a Fed. R. App. P. 28(j) letter, Vidal asks for his sentence to be vacated

and remanded for reconsideration in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

We conclude that Vidal was convicted of an aggravated felony. Moreover, *Blakely* does not undermine *Taylor v. United States*, 494 U.S. 575 (1990), or our own authority embracing the modified categorical approach. Therefore, the district court did not err in applying it. Nevertheless, we remand for further proceedings in light of *Booker*, 125 S. Ct. 738, and *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005) (en banc).

## I

Vidal, a Mexican citizen, entered the United States from Mexico on February 15, 2003. Border Patrol agents discovered and arrested him the next day. The government filed an indictment in the Southern District of California charging Vidal with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. Vidal pled guilty to the charge. The district court then determined, under both the categorical and modified categorical approaches, that Vidal's 1994 conviction for the unlawful driving or taking of a vehicle, in violation of California Vehicle Code § 10851(a), constituted a conviction for a "theft offense." Because a theft offense is an aggravated felony, the district court increased Vidal's offense level by eight levels, pursuant to United States Sentencing Guideline § 2L1.2(b)(1)(C). Vidal was sentenced to 33 months imprisonment.

Vidal timely appealed.

## II

Whether Vidal's prior conviction qualifies as an aggravated felony for purposes of § 2L1.2 is reviewed de novo. *United States v. Arellano-Torres*, 303 F.3d 1173, 1176 (9th Cir. 2002) (citation omitted).

III

A

**[1]** Vidal argues that California Vehicle Code § 10851(a) does not categorically qualify as an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C). In the 2002 version of the Guidelines, which the district court correctly used here, § 2L1.2(b)(1)(C) provides for an 8-level enhancement of the offense level if the defendant was previously deported after a conviction for an aggravated felony. A "theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year" is an aggravated felony for purposes of U.S.S.G. § 2L1.2. U.S.S.G. § 2L1.2, cmt. n. 2; 8 U.S.C. § 1101(a)(43)(G).

**[2]** To determine whether Vidal's prior conviction qualifies as an aggravated felony, we first "look only to the fact of conviction and the statutory definition of the prior offense." *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc) (quoting *Taylor*, 495 U.S. at 602). Under the categorical approach, the court asks whether "the statute criminalizes conduct that would not constitute an aggravated felony under federal sentencing law." *Id.*

**[3]** Vidal contends that § 10851 is overly broad in two respects. First, he maintains that it encompasses the intent to make a temporary or *de minimis* deprivation of a vehicle whereas the generic federal definition of "theft offense" adopted in *Corona-Sanchez* employs the Model Penal Code approach that requires the intent "to withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value." 3 Wayne R. LaFave, Substantive Criminal Law § 19.5, at 88 (2003). We disagree that it is possible to read *Corona-Sanchez* in this way. There, we adopted the Seventh Circuit's generic definition of the phrase "theft offense (including receipt of stolen property)," which is

a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.

291 F.3d at 1205 (quoting *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001)). We noted that "Congress used the words 'theft offense' rather than just 'theft,' thus indicating that the phrase ought be read to incorporate different but closely related constructions in modern state statutes." *Id.* And we explicitly declined to embrace the Model Penal Code definition, whether or not it reflects the view of a majority of modern theft statutes. *Id.*

**[4]** There is no inconsistency between § 10851(a) and *Corona-Sanchez*'s generic definition. Section 10851(a) criminalizes "tak[ing] a vehicle . . . without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle,"[1] while *Corona-Sanchez* contemplates deprivations even if "less than total or permanent." Thus, the intent to make a less than permanent, *i.e.*, temporary, deprivation of a vehicle falls within the intent requirement of a theft offense.

---

[1]In full, § 10851(a) provides:

Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in a county jail for not more than one year or in the state prison or by a fine of not more than five thousand dollars ($5,000), or by both the fine and imprisonment.

Vidal's reliance on *Nevarez-Martinez v. INS*, 326 F.3d 1053 (9th Cir. 2003), is misplaced. He argues that the Arizona statute at issue in *Nevarez-Martinez* was similar to § 10851(a) and that we held there that it did not categorically constitute an aggravated felony. However, the problem being addressed was different. While two sections of the divisible Arizona statute required intent to permanently deprive, the other three sections included no intent requirement whatsoever. *Id.* at 1055 ("The Arizona statute requires knowledge, but the statute does not require intent for violation of (2), (4) or (5)."). We held that violation of the statute did not constitute a theft offense within the generic definition because the statute did not require "criminal intent to deprive the owner," but we did not hold that a statute that criminalizes the intent to temporarily deprive — as California's does — is not a theft offense.

Vidal also maintains that § 10851(a) is over-inclusive in that it allows convictions based on aiding and abetting liability. The statute includes "any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking" of a vehicle. Relying on *Corona-Sanchez*, Vidal points out that we held that California's general theft statute, California Penal Code § 484(a), does not categorically qualify as a theft offense because in California, "[a] defendant can be convicted of the substantive offense of violation of § 484 for aiding and abetting a theft, even if that theory is not specifically charged." 291 F.3d at 1207-08. Additionally, he notes that we recently held in *Penuliar v. Ashcroft*, 395 F.3d 1037 (9th Cir. 2005), that § 10851(a) is not a theft offense that qualifies as an aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G).

**[5]** *Corona-Sanchez* does not control on the import of California's aiding and abetting liability because it was decided under Guidelines that have since been amended. In *Corona-Sanchez*, the district court applied the 1997 version of § 2L1.2 whose commentary made no mention of aiding and abetting liability. 291 F.3d at 1202 n.2. However, § 2L1.2 was

amended in November 2001 (well before Vidal reentered the United States and was convicted and sentenced) to include aiding and abetting aggravated felonies as aggravated felonies. The applicable Application Note states: "Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." U.S.S.G. § 2L1.2, cmt. n. 4 (2002). This commentary governs Vidal's sentence. *See United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 858 (9th Cir. 2005) (noting that the application notes specifically include convictions for aiding and abetting). *Penuliar* is distinguishable for the same reason, because it construed § 1101(a)(43)(G) alone, without the commentary to U.S.S.G. § 2L1.2 that includes aiding and abetting for purposes of enhancing the offense level for prior convictions.

Even so, Vidal argues that California aiding and abetting liability is broader than federal aiding and abetting liability. Again relying on *Corona-Sanchez*, he posits that "[u]nder California law, aiding and abetting liability is quite broad, extending even to promotion and instigation." 291 F.3d at 1208 (citing *People v. Beeman*, 35 Cal.3d 547, 674 P.2d 1318, 1325-26 (1984)). In comparison, he submits, the federal version requires proof

> (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.

*United States v. Sayetsitty*, 107 F.3d 1405, 1412 (9th Cir. 1997) (quoting *United States v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988)).

Assuming (without deciding) that "aiding and abetting" in the Guidelines means the same thing as 18 U.S.C. § 2(a), the

federal aiding and abetting statute, and federal law interpret-
ing it, California aiding and abetting liability requires proof of
all elements contained in the federal definition. Under Cali-
fornia law,

> an aider and abettor is a person who, "acting with (1)
> knowledge of the unlawful purpose of the perpetra-
> tor; and (2) the intent or purpose of committing,
> encouraging, or facilitating the commission of the
> offense, (3) by act or advice aids, promotes, encour-
> ages or instigates, the commission of the crime."

*People v. Prettyman*, 14 Cal.4th 248, 926 P.2d 1013, 1018-19
(1996) (quoting *Beeman*, 674 P.2d at 1326). When the
charged offense is a specific intent crime, as is the unlawful
taking of a vehicle,[2] "the accomplice must share the specific
intent of the perpetrator." *Id.* at 1018 (internal quotation
marks omitted).[3] Further, the government must prove the exis-
tence of a perpetrator of the underlying offense. *People v. Sin-
gleton*, 196 Cal.App.3d 488, 493 (1987).

Vidal also submits that California aiding and abetting lia-
bility extends beyond the federal concept by including promo-
tion or instigation of the underlying crime. But the federal
definition extends to those who counsel, command, induce, or
procure someone to commit a crime and we cannot see how
counseling, commanding, inducing, and procuring would not
encompass promoting or instigating. *See* 18 U.S.C. § 2(a);
Ninth Circuit Manual of Model Criminal Jury Instructions 5.1
(2003) (aiding and abetting instruction). Further, both promo-

---

[2]*See People v. Howard*, 57 Cal.App.4th 323, 327 (1997).

[3]This requirement is accounted for in California's three-part formula-
tion, because an accomplice shares the intent of the perpetrator when he
" 'knows the full extent of the perpetrator's criminal purpose and gives aid
or encouragement with the intent or purpose of facilitating the perpetra-
tor's commission of the crime.' " *Prettyman*, 14 Cal.4th 248, 926 P.2d at
1018 (quoting *Beeman*, 674 P.2d at 1326).

tion and instigation are within the broad meaning of encouragement, also within the ambit of federal aiding and abetting liability. *See United States v. Barnett*, 667 F.2d 835, 841 (9th Cir. 1982) ("An abettor is one who, with mens rea, . . . commands, counsels or otherwise encourages the perpetrator to commit the crime.") (internal quotation marks omitted).

**[6]** Vidal further suggests in his reply brief that aiding and abetting liability for federal sentencing purposes does not cover accessories to criminal conduct who act after the commission of the prohibited act. However, the point is neither developed, nor would it make any difference in this case because, as we shall explain, Vidal pled guilty to *taking* the car.

Accordingly, the district court did not err in concluding that Vidal's offense of conviction was within the generic definition of "theft offense." Regardless, applying the modified categorical approach, it is clear that he pled guilty to a theft offense.

## B

**[7]** If an offense does not categorically qualify as an aggravated felony under federal sentencing law, a court may "go beyond the mere fact of conviction" and examine "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes." *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001) (en banc) (citations and internal quotation marks omitted). The charging papers together with either the signed plea agreement or an abstract of judgment — all three of which are in the record in this case — can support a finding that a prior conviction was an aggravated felony. *See United States v. Velasco-Medina*, 305 F.3d 839, 851-53 (9th Cir. 2002).

**[8]** As a preliminary matter, Vidal argues that applying the modified categorical approach to determine whether he was

convicted of an aggravated felony violates *Blakely v. Washington*, 124 S. Ct. 2531 (2004), because the approach requires the court to find more than the mere fact of a prior conviction. However, this argument is foreclosed by *United States v. Smith*, 390 F.3d 661, 666-67 (9th Cir. 2004), where we held that *Blakely* does not preclude the modified categorical approach. For the reasons set out in *Smith, Booker* is not implicated, either.

[9] Beyond this, Vidal's arguments boil down to the same points that he believes categorically disqualify his prior conviction — that the complaint and conviction could have been based on temporary, *de minimis* deprivations, or upon aiding and abetting liability. The complaint charged:

> On or about June 21, 1994 [Vidal] did willfully and unlawfully drive and take a vehicle, the personal property of GARY CRAWFORD, without the consent of and with intent to deprive the owner of title to and possession of said vehicle, in violation of VEHICLE CODE SECTION 10851(a).

Thus, Vidal admitted that he took a vehicle belonging to someone else, without the owner's consent, intending to deprive the owner of title and possession. These are the elements that meet the generic definition of "theft offense" under *Corona-Sanchez*, as informed by Application Note 4 to § 2L1.2. He was sentenced to 365 days in jail, as required by 8 U.S.C. § 1101(a)(43)(G).

## Conclusion

[10] The district court correctly determined that Vidal was convicted of an aggravated felony for purposes of § 2L1.2. However, because Vidal now challenges his sentence on the ground that the district court sentenced him under the mandatory Guidelines, we remand for further proceedings in light of *Booker*, 125 S. Ct. at 756-57, and *Ameline*, 409 F.3d at 1074.

AFFIRMED IN PART; REMANDED IN PART.

_____

BROWNING, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's holdings that California Vehicle Code § 10851(a) categorically qualifies as an aggravated felony "theft offense" for sentencing, and that Vidal's conviction in fact qualifies under the modified categorical approach as a predicate conviction for sentence enhancement in this case. Accordingly, I would reverse the district court's imposition of the enhancement, vacate Vidal's sentence, and remand for resentencing.[1]

A prior conviction categorically qualifies as a predicate offense for sentence enhancement if the full range of conduct covered by the statute of conviction falls within the generic federal-sentencing definition. *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002)*; accord United States v. Taylor*, 495 U.S. 575, 599-602 (1990); *United States v. Corona-Sanchez*, 291 F.3d 1201, 1208 (9th Cir. 2002) (en banc). However, if such a statute is broader than the generic offense, *i.e.*, if it criminalizes both conduct that falls within the generic definition and conduct that does not, the statute of conviction cannot qualify categorically for enhancement purposes.[2] *Taylor*,

_____

[1]I concur in the majority's holding that *Blakely v. Washington*, 124 S. Ct. 2531 (2004), does not preclude the modified categorical approach of *United States v. Taylor*, 495 U.S. 575 (1990), *see United States v. Smith*, 390 F.3d 661, 666-67 (9th Cir. 2004); and that on remand, following *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005) (en banc), the district court should determine whether the sentence imposed would have been materially different had it known the sentencing guidelines were advisory.

[2]Although *Taylor* and *Corona-Sanchez* counsel that the term "theft offense" should be "read to incorporate different but closely related constructions in modern state statutes," *Corona-Sanchez*, 291 F.3d at 1205

495 U.S. at 599-602; *United States v. Penuliar*, 395 F.3d 1037, 1041 (9th Cir. 2005); *Corona-Sanchez*, 291 F.3d at 1211.

Vidal asserts that § 10851(a) is broader than the generic definition of "theft offense" adopted by this court in *Corona-Sanchez* because, *inter alia*, it criminalizes aiders and abettors as well as accessories. I agree with the majority's analysis that Application Note 4 to § 2L1.2 of the Sentencing Guidelines is dispositive in this context as to the former.[3] However, the majority fails to address adequately the latter, *ante* at 14521, and in doing so reaches an erroneous conclusion.

In relevant part § 10851(a) states the following are guilty of the public offense it describes: "[a]ny person who drives or takes a vehicle not his or her own . . . or any person who is a party or an accessory to or an accomplice in" the same. Cal. Veh. Code § 10851(a). It is long settled that California law no longer recognizes any distinction between principals in the first degree, second degree (aiders and abettors present at the scene), or accessories before the fact (aiders and abettors not present).[4] Additionally, California does not include as principals, "accessories," *i.e.* formerly, "accessories after the fact."[5]

---

(quoting *Taylor*, 495 U.S. at 590-91), such reasoning cannot cure the over-breadth of a state statute which criminalizes categories of conduct which the generic sentencing definition does not. Such a conclusion is plainly inconsistent with *Taylor*'s primary holding. *See Taylor*, 495 U.S. at 599, 602.

[3] Application Note 4 in this context appears to add to § 2L1.2(b)(1)(C), effectively, the following italicized text: "after . . . a conviction for an aggravated felony *or aiding and abetting an aggravated felony*, increase 8 levels." *See* U.S. Sentencing Guidelines Manual § 2L1.2, cmt. n.4 (2002).

[4] *See* Cal. Pen. Code § 31 (Deering 2005); LaFave, SUBSTANTIVE CRIMINAL LAW § 13.1(e), at 333-36 (2003). California abolished such distinctions in 1872.

[5] *See, e.g.*, *People v. Mitten*, 37 Cal. App. 3d 879, 883 (1974) (contrasting California's approach to that of several other states).

As a result, the language of § 10851(a) extending liability to "an accessory to" the unlawful driving or taking of another's vehicle can only be understood properly to reach parties who sufficiently and knowingly aid a principal after the commission of the offense.[6]

Although Application Note 4 to § 2L1.2 extends sentencing liability to aiders and abettors, it does not extend it to accessories.[7] Comparing the statute of conviction to the generic predicate offense definition, it is beyond dispute that, by criminalizing accessories, § 10851(a) covers a broader range of conduct than does the Sentencing Guidelines generic "theft offense."[8] As a result, a conviction under § 10851(a) cannot categorically qualify as a "theft offense" for sentence enhancement within the meaning of 8 U.S.C. § 1101(a)(43)(G). *See Penuliar*, 395 F.3d at 1044-45.

Because § 10851(a) fails categorically, we continue with *Taylor*'s familiar "modified categorical" analysis in which we examine relevant, judicially noticeable documents in the record to determine if they "unequivocally establish[ ]" that the defendant in fact was convicted of, or pled guilty to, the generically defined crime. *Corona-Sanchez*, 291 F.3d at 1211;

---

[6]Cal. Veh. Code § 10851(a) became effective in 1997, one hundred and twenty-five years after Cal. Pen. Code § 31 changed the State's approach to the naming of criminal parties. *See also*, LaFave, *supra*, § 13.6(a) "Accessory After the Fact".

[7]The note in full states: "4. *Aiding and Abetting, Conspiracies, and Attempts.*——Prior convictions of offenses counted under subsection (b)(1) include . . . the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." U.S.S.G. § 2L1.2, cmt. n.4 (2002).

[8]In *Corona-Sanchez*, this court adopted the Seventh Circuit's definition of "theft offense." *Corona-Sanchez*, 291 F.3d at 1205 ("a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent"). Given Application Note 4 to § 2L1.2, in this context, a "theft offense" includes the commission or attempt to commit, the aiding and abetting of, or the conspiracy to commit such an offense. It plainly does not cover accessorial liability.

*accord United States v. Franklin*, 235 F.3d 1165, 1170 (9th Cir. 2000) (listing documents which, for modified categorical analysis, can and cannot "clearly establish" defendant's conduct).

I disagree with the majority's conclusion, *ante* at 14521-22, that any permissible combination of Vidal's charging papers, signed plea agreement, and judgment of conviction is capable of "unequivocally," or even clearly, establishing the nature of the conduct to which Vidal pled guilty.[9] Effectively, each merely recites the generic language of § 10851(a).[10] We have found previously that this is not enough to survive modified categorical analysis. *United States v. Lopez-Montanez*, 421 F.3d 926, 932 (9th Cir. 2005) (finding a charging document which "simply restates the language of the statute" unable to establish the elements of conviction for purposes of modified categorical analysis); *accord Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 888 (9th Cir. 2003) ("The difficulty is that the conviction's label only goes so far; the conviction itself must meet the generic definition of theft no matter what the state calls it."). Merely reciting the language of the statute tells the court no more than would a recitation of the code section-number alone. This is particularly so in this case given the

---

[9]This Court is not permitted to notice for modified categorical analysis facts recited in Vidal's presentence report. *Franklin*, 235 F.3d at 1171 (explaining "*Taylor* and this circuit in our precedents have foreclosed any approach that considers the underlying facts of prior convictions to determine whether a defendant was convicted by a jury or pleaded guilty to a predicate offense").

[10]Vidal's judgment of conviction refers only to "Count 1"; his plea agreement reveals that he pled guilty to "Count 1 10851(a)VC DRIVING A STOLEN VEHICLLE [sic]"; and his charging papers simply recite § 10851(a)'s generic statutory language with the date and Vidal's and another's names inserted. *See* Excerpt of Record, at 39, 44, 46. Additionally, the variation in the wording of the charge in Vidal's charging papers and plea is not insignificant. *See infra* note 10. Despite the majority's assertion, *ante* at 14521, the record raises, rather than resolves unequivocally, questions as to the nature of Vidal's actions.

breadth of activity criminalized by and chargeable under § 10851(a).[11]

Therefore, because § 10851(a) does not qualify categorically as an aggravated felony "theft offense" for Sentencing Guidelines enhancement, and because the record does not unequivocally establish that Vidal in fact pled guilty to a "theft offense," I would reverse the 8-level sentence enhancement, vacate Vidal's sentence, and remand for resentencing.

---

[11]California law is clear that § 10851(a) covers a range of conduct in concert with its larceny and joy-riding statutes, and contains distinct, alternate theories of "taking" and merely "driving." *See*, *e.g.*, *People v. Ivans*, 2 Cal. App. 4th 1654, 1663 (1992); *People v. Austell*, 223 Cal. App. 3d 1249, 1251-52 (1990); *People v. Donnell*, 52 Cal. App. 3d 762, 769 (1975). The imprecision of Vidal's charging and plea documents is not insignificant; *e.g.*, under California law, if a charging document "charges a defendant with both driving and taking a vehicle without the owner's consent, it necessarily charges a violation of both" § 499b (California's "joy-riding" statute) and § 10851. *Ivans*, 2 Cal. App. 4th at 1663. Cal. Penal Code §§ 31, 971 permit an argument that Vidal's charging papers establish he was charged as a principal and not as an accessory. However, because the text of § 10851(a) itself extends liability to accessories, mere reference to general provisions of California's Penal Code cannot unequivocally support such a conclusion.