Filed 9/19/14  P. v. Mays CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CLIDE MAYS,<br><br>    Defendant and Appellant. | B252950<br><br>(Los Angeles County<br>Super. Ct. No. SA078100) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Mark E. Windham, Judge.  Affirmed.

Kelly C. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Clide Mays (defendant) was convicted of transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)**[1]**), and possession for sale of a controlled substance (§ 11351). On appeal, defendant requests that we conduct an independent review of the in camera hearing on his motion made pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to determine whether it discloses error by the trial court, and contends that the trial court erred in instructing the jury on aiding and abetting, and his conviction transportation of a controlled substance must be reversed because section 11352 was amended during the pendency of his appeal to require that the transportation of the controlled substance be for its sale. We affirm the judgment.

## BACKGROUND

### A.     Factual Background

#### 1.     *Prosecution Evidence*

On August 13, 2010, Postal Inspector Peter Holt was working in a back office at the Los Angeles International Airport Post Office. Inspector Holt was with, inter alia, Los Angeles County Sheriff's Department Detective Tom Logrecco and Sergeant Keith Lieberman, who were assigned to the Parcel and Cargo Narcotics Enforcement Team. Using surveillance cameras, Inspector Holt and Detective Logrecco saw defendant enter the lobby of the airport post office with an express mail package. Defendant went to the counter, handed the package to the employee, and paid cash. The employee placed the package in a bin and defendant exited the room.

---

**[1]**     All statutory citations are to the Health and Safety Code unless otherwise noted.

2

Inspector Holt inspected the package and noticed the sender's address was from Marina Del Rey, California, and the package was being sent to Michigan. That information piqued Inspector Holt's interest because he knew there were other places closer to Marina Del Rey to mail the package and Michigan was considered a "target state" for the shipping of narcotics.[2]

Inspector Holt provided information about the package and defendant's physical description to Detective Logrecco. When defendant entered a vehicle parked in the airport post office parking lot and drove off, Detective Logrecco and Lieutenant Lieberman were in an unmarked car parked in that parking lot. Detective Logrecco and Lieutenant Lieberman followed defendant and stopped him after he committed a traffic violation. Detective Logrecco walked toward the front of defendant's car and saw several items in plain view on the back seat, including a foodsaver vacuum, a heat seal machine, gloves, vacuum seal bags, and tissue paper.

Detective Logrecco spoke to defendant. Defendant told Detective Logrecco that he was coming from the post office and had mailed a box that "could possibly contain drugs," but defendant denied the drugs belonged to him. Defendant said he arrived in Los Angles from Michigan and saw Marcus King,[3] whom defendant recognized, at the Detroit airport. Marcus asked defendant "to do some things for him," and defendant agreed. Defendant said that in exchange for mailing the parcel, "[H]e was getting some money and that [Marcus] would pay for his gas." Defendant was unable to give Detective Logrecco any contact information for Marcus.

At the Los Angeles International Airport Post Office, a police narcotics detection dog assigned to Sergeant Lieberman "alerted to" the package defendant had mailed.

---

[2]     Inspector Holt testified that "California is what we consider to be a source state of narcotics where drugs originate from California and travel throughout the country. . . to places such as Michigan." Detective Logrecco said that he "constantly" saw drugs being shipped from California to Michigan.

[3]     Defendant testified that he believed Marcus's last name was King because Marcus's relatives had the last name King. We refer to Marcus by his first name.

3

Inspector Holt obtained a search warrant. About a week later, Inspector Holt and Detective Logrecco opened the package and found inside a cocaine "brick"—998 grams of cocaine powder. The cocaine brick was inside multiple layers of a vacuum-sealed or "foodsaver" type of bags. The wrapped cocaine was, in turn, located in a day planner that was located in a leather zipped binder and that binder was inside a sealed yellow envelope surrounded by tissue paper.

Inspector Holt and Detective Logrecco testified that narcotic shippers commonly use vacuum sealed bags and multiple containers in narcotics packages to hide the odor of the drugs, and cash payments to ship the narcotics package because it provides the shipper with anonymity. Detective Logrecco testified that a foodsaver machine requires use of the kind of vacuum seal bags found in defendant's vehicle, and the gloves in defendant's vehicle were of significance to him because "more and more people" use gloves to avoid leaving fingerprints. Inspector Holt testified that narcotics packages typically were shipped by express mail because the shipper does not want the package "to be in the mail stream very long."

Detective Logrecco opined that the cocaine was possessed for the purpose of sale. He formed this opinion on the basis that the amount was more than someone would need for personal use, and the value—about $30,000 to $40,000 outside of California, that can be double or triple that amount if "filler" is added—is high.

### 2. *Defendant's Evidence*

Defendant testified to the following. A few days before the incident, he flew from Detroit, Michigan to Los Angeles, California to see a friend, Lashanda Luster. Defendant had only Luster's name and telephone number. Although Luster knew that defendant was coming to California to see her, when defendant arrived at the Los Angeles International Airport, his attempts to reach Luster failed; she did not answer her telephone. Defendant did not hear from Luster until the following day, when he received a message from her that she was in Ohio. Defendant never "connect[ed] with her" while he was in California.

4

When defendant was boarding the airplane at the Detroit airport to fly to Los Angeles, he saw Marcus. Defendant and Marcus were "not really" friends; according to defendant, Marcus was merely "a familiar face."

After arriving at the Los Angeles airport, defendant went to a rental car business. As defendant was entering his rental car, he overheard an employee tell Marcus that there was "a problem" with his credit card. Marcus then asked defendant to drop him off at his house. Defendant agreed and dropped him off. After they arrived at Marcus's house, Marcus "showed [defendant] around" various areas of Los Angeles. They spent a few hours together, and exchanged phone numbers.

During the morning of the incident, Marcus called defendant and asked him for a ride to the airport. Defendant agreed. A woman dropped Marcus off at defendant's hotel. Marcus put his suitcase in the trunk of the vehicle, and brought the express mail package and a bag into the car. Defendant placed the bag on the back seat of the vehicle, and kept the package with him as he sat in the front passenger seat of the vehicle. Defendant did not know what was contained in either the bag or the package.

Marcus asked defendant to mail the package for him, and to drop the bag off at his house. Defendant did not "fill out" the address label for the package. Marcus gave defendant about $100 in cash to mail the package, and to "just keep the change" to be used for "gas or whatever."

After defendant dropped off Marcus at the airport, Defendant went to the nearest post office and mailed the package. Defendant drove away from the post office but was eventually pulled over by Detective Logrecco. Defendant told Detective Logrecco, "There better not be any drugs in there." Defendant did not know if the bag that Marcus put on the back seat of the vehicle was open, but everything was inside the bag. Once defendant realized that he was under investigation for mailing a controlled substance, he provided the peace officers with Marcus's name as the person who gave him the package. Defendant told the peace officers that he did not have Marcus's or Luster's telephone numbers because they were in his cellular telephone that he had left at the hotel. Defendant also did not provide the peace officers with Marcus's address because he

5

"really didn't have time to," and there was "so much chaotic stuff going on." Defendant "wasn't even thinking" that Marcus's address was in the vehicle's navigation system.

## B.     Procedural Background

The District Attorney of Los Angeles County filed an information charging defendant with transportation of a controlled substance (cocaine powder) in violation of section 11352, subdivision (a) (count 1), and possession for sale of a controlled substance (cocaine powder) in violation of section 11351 (count 2). Defendant filed a pretrial discovery motion pursuant to *Pitchess*, *supra*, 11 Cal.3d 531, and after conducting an in camera hearing, the trial court found that there was no discoverable information.

Following trial, the jury found defendant guilty on all counts. The jury also found defendant guilty of possession of cocaine (§ 11350, subd. (a)), a lesser offense of count 2. The trial court sentenced defendant to state prison for a term of three years, consisting of a low term of three years on count 1. The trial court sentenced defendant to a low term of three years on count 2, the imposition of which sentence was stayed. The trial court ordered defendant to pay various fines and assessments, and awarded defendant custody credit.

The trial court denied defendant's motion for new trial in which motion defendant argued that the trial court should not have given jury instructions on aiding and abetting. Defendant filed a timely notice of appeal.

## DISCUSSION

## A.     *Pitchess* Motion

Before trial, defendant filed a pretrial discovery motion pursuant to *Pitchess*, *supra*, 11 Cal.3d 531 seeking the discovery of confidential personnel records for Detective Logrecco relating to prior wrongful acts of moral turpitude, dishonesty, and mishandling evidence. The trial court granted the *Pitchess* motion. After conducting an in camera review, the trial court ruled that no discoverable evidence existed. Defendant

requests, and the Attorney General does not disagree, that we independently review the sealed portion of the reporter's transcript on the in cameral hearing to determine whether the required *Pitchess* procedure was followed.

"A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion. [Citation.]" (*People v. Hughes* (2002) 27 Cal.4th 287, 330.) We have independently reviewed the sealed record of the in camera proceeding as to Detective Logrecco to determine if any discoverable information was withheld. The sealed record consists of a reporter's transcript of the hearing in which the trial court provided a detailed description of the documents it examined. (See *People v. Myles* (2012) 53 Cal.4th 1181, 1209 [a trial court's statement of the documents it examined is adequate for purposes of conducting a meaningful appellate review]; *People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286 [same]; *People v. Mooc* (2001) 26 Cal.4th 1216, 1229 [same].) We conclude that the trial court did not abuse its discretion in ruling on defendant's *Pitchess* motion. (*People v. Hughes*, *supra*, 27 Cal.4th at p. 330.)

### B. Aiding and Abetting Jury Instructions

Defendant contends that the trial court erred in instructing the jury that aiding and abetting was a basis on which defendant may be found guilty on count 2 for possession for sale of a controlled substance because there is insufficient evidence in support of that theory. Defendant argues that "the possessor of the drugs" [i.e., defendant] cannot "aid and abet an anonymous recipient of the drugs [i.e., the addressee of the package] in the absence of evidence that the alleged recipient committed the elements of the offense." Defendant also applies that same theory to an anonymous seller. Defendant therefore argues that aiding and abetting was a legally inadequate theory. We disagree.

7

*1.*      *Standard of Review and Applicable Law*

A trial court errs when it gives an instruction "which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  "[A]iding and abetting liability cannot attach unless the substantive elements of a predicate offense are met.  This requirement may be satisfied by proof of an attempt [to commit the offense]." (*People v. Perez* (2005) 35 Cal.4th 1219, 1227.)

"When one of the theories presented to a jury is legally inadequate . . . the jury cannot reasonably be expected to divine its legal inadequacy. . . .   In such circumstances, reversal generally is required unless 'it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory.' [Citation.]" (*People v. Perez, supra*, 35 Cal.4th at p. 1233; *People v. Guiton*, *supra*, 4 Cal.4th at p. 1130.)


*2.*      *Background Facts*

Regarding count 2 (possession for sale of a controlled substance in violation of section 11351), the trial court instructed the jury with CALCRIM No. 2304, stating, "The defendant is charged in count 2 with possession for sale of cocaine, a controlled substance.  [¶]  To prove the defendant is guilty of this crime, the People must prove that:  [¶]  1, the defendant possessed a controlled substance;  [¶]  2, the defendant knew of its presence;  [¶]  3, the defendant knew of the substance's nature or character as a controlled substance;  [¶]  4, when the defendant possessed the controlled substance, he intended to sell it;  [¶]  5, the controlled substance was cocaine;  [¶]  and 6, the controlled substance was in a usable amount.  [¶]  Selling for the purpose of this instruction means exchanging cocaine for money, services, or anything of value.  [¶]  A usable amount is a quantity enough to be used by someone as a controlled substances.  Useless traces are not usable amounts.  On the other hand, a usable amount does not have to be enough, either in amount or strength, to affect the user."

In the afternoon of Friday, September 20, 2013, during the second day of deliberations, the jury sent a note to the trial court stating that, "We have reached a

8

verdict on one count, and are deadlocked on the other two counts." The jury foreperson thereafter agreed with the trial court that there are three separate charges, and the jury was asked to deliberate on two counts.[4] The jury foreperson informed the trial court that the votes were 10 to 2 on count 1, and 9 to 3 on the charge regarding count 2 for which the jury did not reach a verdict.[5] The trial court excused the jury for the weekend instructed the jury to resume deliberations on Monday.

In the morning of Monday, September 23, 2013, the jury sent a note to the trial court requesting, "Clarification of the following: [¶] 'When the defendant possessed the controlled substance, he intended to sell it.'[6] [¶] Does this mean he is part of the process (knew of the intent to sell), or does it mean he has to physically or personally have to sell a portion of it, or does it mean he has to sell all of it himself?"

Outside the presence of the jury, the trial court explained to counsel that in response to the jury's note, it intended to instruct the jury on constructive possession, and defendant may be guilty of committing the crime of possession for sale of a controlled substance by directly committing the crime or by aiding and abetting another who directly committed the crime. Defendant's counsel objected to the aiding and abetting instructions on the grounds that the prosecution never argued the theory and the instructions were not supported by the facts. The trial court overruled the objections by

---

[4]     The jury was instructed that a lesser included offense to count 2 is possession of a controlled substance.

[5]     In support of defendant's motion for new trial, defendant's counsel declared that, "During [conversations between defendant's counsel and several jurors that occurred at the conclusion of defendant's trial, defendant's counsel was told] on Friday, September 20, 2013, the jurors were deadlocked in their verdict of NOT GUILTY by a vote of 10 to 2 on Count 1. . . and *9 to 2* on Count 2 . . . . [¶] . . . Subsequently, on this same day, the jurors reached a unanimous decision of NOT GUILTY on Count 2. Another bench officer decided not to take this verdict on Friday, September 20, 2013. [¶] . . . At the time of [the trial court's] reading of [CALCRIM Nos.] 400 and 401, the jury had already signed their NOT GUILTY verdict form as to Count 2." (Italics added.)

[6]     This phrase was included in the jury instructions as an element that the prosecutor must prove regarding count 2.

defendant's counsel, stating that the jury asked whether defendant was "part of the process," and whether he must physically and personally have to sell a portion of the cocaine. The court continued, "I have to answer those questions. I can't just say, 'Figure it out yourself.' They need some help here. And I think this does answer the question. No, he doesn't have to personally sell a portion of it; and if you are knowingly and willingly part of the process, then you're guilty of the offense."

Defendant's counsel requested that the trial court give a cautionary instruction that the trial court, in giving additional instructions, did not intend to insinuate that defendant was guilty, but was merely giving the additional instructions to see if it would help the jury. The trial court agreed.

The trial court instructed the jury, inter alia, with modified versions of CALCRM Nos. 400 and 401, stating, "I'll give you additional instructions regarding the principles of aiding and abetting. General principles. A person may be guilty of a crime in two ways: [¶] One, he or she may have directly committed the crime. I will call that person the perpetrator; [¶] Two, he or she may have aided and abetted a perpetrator who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator. [¶] Intended crimes. To prove the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] One, the perpetrator committed the crime; [¶] Two, the defendant knew that the perpetrator intended to commit the crime; [¶] Three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] And four, the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to and does in fact aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider or abetter." The trial court then stated, "Now, an admonition. Some of these instructions may not apply depending upon your findings about the facts of the

10

case.  Do not assume that just because I give a particular instruction that I am suggesting anything about the facts.  After you have decided what the facts are, follow the instructions that do apply to the facts as you find them.  [¶]  That answers your question.  I'm going to now excuse you back to the jury deliberation room to continue your deliberations."  After the jury deliberated for about eight minutes, it found defendant guilty on all counts.


### 3.     Analysis


#### a)      Forfeiture

The Attorney General contends that by failing to object to the aiding and abetting jury instructions on the specific ground that aiding and abetting was a legally inadequate theory, defendant forfeited his claim that the trial court erred on that basis.  Defendant did not forfeit his contention.

"A party may not raise an argument on appeal that he or she did not raise before the trial court."  (*People v. Mayham* (2013) 212 Cal.App.4th 847, 856.)  "The law generally requires . . . a *specific* objection . . . to preserve an issue for appeal."  (*People v. Smith* (1998) 64 Cal.App.4th 1458, 1468; *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1118-1119 [a challenge to jury instruction that was generally accurate was forfeited for failure to seek modification or clarification].)

Defendant's counsel objected to the aiding and abetting instructions on the ground that the instructions were not supported by the facts.  Defendant's "legally inadequate theory" contention asserted on appeal is premised on there not being substantial evidence to support the giving of the aiding and abetting instructions.  That is, defendant argues that there is not substantial evidence that defendant aided and abetted someone who committed the offense and, therefore, aiding and abetting was a "legally inadequate theory."  (*People v. Parra* (1999) 70 Cal.App.4th 222, 227, fn. 5; *People v. Singleton* (1987) 196 Cal.App.3d 488, 493.)  By objecting to the jury instructions on the ground

11

that it was not supported by the evidence defendant did not forfeit his contention that the jury was instructed on a legally inadequate theory.

      b)  Error

   The trial court instructed the jury, inter alia, with modified versions of CALCRM Nos. 400 and 401 concerning aiding and abetting. Defendant argues defendant, as a possessor of the drugs, cannot aid and abet someone in the absence of evidence that the someone committed the underlying offense. (*People v. Parra*, *supra*, 70 Cal.App.4th at p. 227, fn. 5; *People v. Singleton*, *supra*, 196 Cal.App.3d at p. 493.) Defendant argues therefore that because there is no evidence of a perpetrator having committed the crime, aiding and abetting was a legally inadequate theory on which defendant could be found guilty for possession for sale of a controlled substance.

   There is no reasonable likelihood that the jurors would have applied CALCRM Nos. 400 and 401 to mean that they could convict defendant of possession for sale of cocaine based on the theory that he aided and abetted some recipient or another seller who had not committed the crime. The jury was instructed that for defendant to be guilty of aiding and abetting a crime, there had to be a perpetrator who "committed the crime" whom defendant aided and abetted. We presume the jury followed the trial court's instructions. (*People v. Avila* (2009) 46 Cal.4th 680, 719; *People v. Bennett* (2009) 45 Cal.4th 577, 596.)

   There is substantial evidence in the record—defendant's testimony—that a "Marcus" committed the crime, and defendant aided and abetted him. Defendant testified that Marcus existed; he was a real person. Defendant said that Marcus had possession of the express mail package in defendant's vehicle as defendant drove him to the airport, and Marcus then asked defendant if he could mail the package for him and gave defendant one hundred dollars to do so. Detective Logrecco, a member of the parcel and cargo narcotics team with about 26 years of experience as a peace officer, opined that the controlled substance in this case—cocaine—was possessed for the purpose of sale. He based his opinion on the large amount of the controlled substance—almost a kilogram of

12

cocaine—that is "greater than somebody would use for personal use," and the high value of the cocaine—about $30,000 to $40,000 outside of California.

In addition, the package that defendant testified was given to him to mail by Marcus, was addressed to be delivered in Michigan, and defendant said that he did not "fill out" the address label for the package. There is evidence that California is considered to be a "source state" of narcotics. Drugs originate from California and travel to various places, including Michigan, which state is considered to be a "target state" for the shipping of narcotics. Detective Logrecco said that "we constantly see drugs being shipped to Michigan from California."

Defendant argues that, "The jury would not have construed the aiding and abetting instruction as applicable to Marcus because (1) the jury received no guidance from the court or from the attorneys during argument as to how the aiding and abetting instruction could apply, and (2) the prosecutor argued that *Marcus did not exist, but that if he did, appellant was not guilty.*" The prosecutor argued, in effect, that defendant's assertion that Marcus existed was to support the theory that defendant did not know what was in the package. The prosecutor further argued that Marcus did not exist; however, defendant directly committed the crime, and defendant knew about the contents of the package because of the materials found in defendant's car.[7]

The aiding and abetting instructions were clear, and there was no indication in the record that the jury failed to understand and follow those instructions. (*People v. Avila, supra,* 46 Cal.4th at p. 719; *People v. Bennett, supra,* 45 Cal.4th at p. 596.) In addition, although the prosecutor argued that Marcus did not exist, the jury was free to reject that argument and conclude reasonably that defendant knew about the contents of the package. The trial court did not err in instructing the jury on aiding and abetting.

---

[7] There was also evidence that defendant told Detective Logrecco that the package he mailed "could possibly contain drugs," but defendant denied the drugs belonged to him.

**C.    Amendment to Section 11352 Requiring That the Transportation of the Controlled Substance be for its Sale.**

Defendant contends that his conviction transportation of a controlled substance must be reversed because section 11352 was amended during the pendency of his appeal to require that the transportation of the controlled substance be for its sale.  We disagree.

*1.    Background Facts*

Regarding count 1 (transportation of a controlled substance (§ 11352, subd. (a)), the trial court instructed the jury with CALCRIM No. 2300, stating, "The defendant is charged in count 1 with transporting cocaine, a controlled substance.  To prove the defendant is guilty of this crime, the People must prove that:  [¶]  1, the defendant transported a controlled substance;  [¶]  2, the defendant knew of its presence;  [¶]  3, the defendant knew of the substance's nature or character as a controlled substance;  [¶]  4, the controlled substance was cocaine;  [¶]  and 5, the control substance was in a usable amount.  [¶]  A person transports something if he or she carries it or moves it from one location to another, even if the distance is short.  [¶]  A usable amount is a quantity that's enough to be used by someone as a controlled substance.  Useless traces are not usable amounts.  On the other hand, a usable amount does not have to be enough, either in amount or strength, to affect the user."

*2.    Analysis*

Defendant was convicted in count 1 of the transportation of a controlled substance in violation of section 11352.  Effective January 1, 2014, during the pendency of defendant's appeal, the Legislature amended section 11352, adding that, "For the purposes of this section 'transports' means to transport for sale."  (Stats. 2013, ch. 504, § 1.)  "[A]bsent a saving clause, a criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal."  (*People v. Babylon* (1985) 39 Cal.3d 719, 722.)

No savings clause was included in the amendments to section 11352.  (Stats. 2013, ch. 504, § 1.)  Under the amendment to section 11352, therefore, transportation is not a crime unless the prosecution establishes beyond a reasonable doubt that the transportation was for sale; "for sale" is now an element of the offense.  (§ 11352, subds. (a) and (c).)

Defendant's conviction on count 1 for transportation of a controlled substance in violation of section 11352, subdivision (a) should not be reversed because the omission of the "for sale" element from that count was harmless beyond a reasonable doubt.  (*People v. Flood* (1998) 18 Cal.4th 470, 503; *People v. Ortiz* (2002) 101 Cal.App.4th 410, 416.)  Defendant transported almost a kilogram of cocaine, which amount, Detective Logrecco opined, was for purposes of sale because it was a "greater [amount] than somebody would use for personal use," and its value was high.  In count 2, the jury found defendant guilty of possession of a controlled substance (i.e., cocaine) for sale.  Thus, the jury resolved the "for sale" element against defendant.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, Acting P. J.


We concur:


KRIEGLER, J.


MINK, J.[*]

---

[*]  Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.