**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.

GUILLERMO AGUILA-MONTES DE
OCA,
                    *Defendant-Appellant.*

No. 05-50170

D.C. No.
CR-04-02175-RTB

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued February 9, 2006
Submitted February 29, 2008
Pasadena, California

Filed April 28, 2008

Before: David R. Thompson, Thomas G. Nelson, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Thompson

4579

## COUNSEL

Vincent J. Brunkow, San Diego, California, for the appellant.

Steven E. Stone, Assistant United States Attorney, San Diego, California, for the appellee.

## OPINION

THOMPSON, Senior Circuit Judge:

Guillermo Aguila-Montes De Oca ("Aguila-Montes") appeals the sentence imposed upon him for attempting to reenter the United States following deportation, in violation of 8 U.S.C. § 1326. Aguila-Montes challenges the district court's sixteen-level sentence enhancement resulting from the court's determination that his prior conviction for first degree residential burglary, in violation of section 459 of the California Penal Code, constituted a crime of violence under section 2L1.2(b)(1)(A) of the United States Sentencing Guidelines Manual ("Guidelines").[1] We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We hold that Aguila-Montes's prior California burglary conviction constituted a crime of violence under the Guidelines, and affirm his sentence with the sixteen-level sentence enhancement.

### I. Background

Aguila-Montes, a Mexican citizen, queued up at the San Ysidro Point of Entry on July 5, 2004. Customs and Border Protection officers arrested him after verifying by computer that he was a deported alien. The government charged him with violating 8 U.S.C. § 1326 by attempting to reenter the United States. A jury convicted him, and the district court sentenced him to 120 months in prison and two years of supervised release.

During sentencing, the district court concluded that Aguila-Montes had previously been convicted of a crime of violence

---

[1]Although Aguila-Montes also raises a constitutional challenge to his sentence, and appeals the underlying conviction, this opinion addresses only the district court's decision to apply the sixteen-level sentence enhancement. We consider the other appellate issues in a separate memorandum disposition filed with this opinion.

as defined by section 2L1.2 of the Guidelines, and for that reason enhanced his sentence sixteen levels. The prior conviction was from 1988, when Aguila-Montes pleaded guilty to first degree residential burglary in violation of section 459 of the California Penal Code. Aguila-Montes argues that because this 1988 state conviction could have been based upon criminal liability for aiding and abetting or for other conduct not included within the definition of burglary of a dwelling in section 2L1.2 of the Guidelines, the district court erred in applying the sixteen-level sentence enhancement.

## II. Discussion

### A. Legal Framework

Section 2L1.2 of the Guidelines addresses sentencing for the crime of unlawfully entering or remaining in the United States. It provides sentencing enhancements based on prior convictions for other offenses. Subsection (b)(1) lists the predicate offenses and their corresponding enhancements. It provides a sixteen-level enhancement for a prior "crime of violence." U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A) (2006). The Guidelines' application notes specifically state that "burglary of a dwelling" constitutes a crime of violence. *Id.* § 2L1.2 cmt. n.1(B)(iii).

Aguila-Montes disputes the district court's determination that his 1988 conviction for first degree residential burglary constituted burglary of a dwelling, a crime of violence under the Guidelines.

"The sentencing judge's application of the Sentencing Guidelines, including whether a prior conviction is a 'crime of violence' . . . for the purposes of U.S.S.G. § 2L1.2, is reviewed de novo." *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 856 (9th Cir. 2005) (citing *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1049 (9th Cir. 2003)). To determine whether Aguila-Montes's prior conviction qual-

ifies as burglary of a dwelling under the Guidelines, we use the analytical approach outlined in *Taylor v. United States*, 495 U.S. 575 (1990). *See United States v. Wenner*, 351 F.3d 969, 972 (9th Cir. 2003) (citing *United States v. Becker*, 919 F.2d 568, 570 (9th Cir. 1990)).

A *Taylor* analysis requires a comparison between the defendant's prior conviction (in this case, California residential burglary) and the offense incorporated into the Guidelines (burglary of a dwelling); if the elements of the two match, sentencing enhancement is proper. *See id.*

Under the categorical approach, we examine California's statutory definition of first degree residential burglary to determine if *all* convictions under that statute constitute burglary of a dwelling under the Guidelines. *See id.* Under the modified categorical approach, we additionally consider "the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented' " to determine whether Aguila-Montes's conviction constituted burglary of a dwelling under the Guidelines. *See United States v. Almazan-Becerra*, 482 F.3d 1085, 1088 (9th Cir. 2007) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)); *Wenner*, 351 F.3d at 972.

Because burglary of a dwelling under the Guidelines is the object of comparison in both approaches, its definition is critical to the analysis. *See United States v. Corona-Sanchez*, 291 F.3d 1201, 1204 (9th Cir. 2002) (en banc).

**[1]** As a starting point in defining burglary of a dwelling, we know that the Guidelines do not simply incorporate the convicting state's formulation of that offense or any other. *See id.* at 1205 (citing *Taylor*, 495 U.S. at 590-91). Instead, "when Congress described predicate offenses, it meant to incorporate 'the generic sense in which the term is now used in the criminal codes of most States.' " *Id.* (quoting *Taylor*, 495 U.S. at 598). Thus, burglary of a dwelling under the Guidelines takes

on its generic, contemporary meaning, and includes the following elements: the " 'unlawful or unprivileged entry into, or remaining in, a building or other structure [that is a dwelling], with intent to commit a crime.' " *See Rodriguez-Rodriguez*, 393 F.3d at 852 (quoting *Taylor*, 495 U.S. at 598; *Wenner*, 351 F.3d at 973).

**[2]** The Supreme Court recently considered how aiding and abetting liability fits into the generic definitions of predicate offenses. In *Gonzales v. Duenas-Alvarez*, 549 U.S. ___, 127 S. Ct. 815 (2007), the Court held that the generic term "theft offense" in the Immigration and Nationality Act includes the crime of aiding and abetting a theft offense. *Id.*, 549 U.S. at ___, 127 S. Ct. at 820. The Court concluded that because the distinction between the liability of first-degree principals, second-degree principals, and accessories before the fact has been abolished in all American jurisdictions, " 'the generic sense in which' the term 'theft' 'is now used in the criminal codes of most States,' covers such 'aiders and abettors' as well as principals." *Id.* (quoting *Taylor*, 495 U.S. at 598). Therefore, the Court held that "the criminal activities of . . . aiders and abettors of a generic theft must . . . fall within the scope of the term 'theft' in the federal statute." *Id.*

**[3]** In the Guidelines context—as opposed to the immigration context—it is also important to note that the Sentencing Commission added the following application note to section 2L1.2 of the post-2001 Guidelines: "Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.5 (2006). It is therefore clear that, at least since this amendment to the post-2001 Guidelines, generic offenses under section 2L1.2(b) of the Guidelines, such as burglary of a dwelling, include a predicate state conviction that resulted from aiding and abetting conduct.

*B.   Categorical Approach*

**[4]** As with all California crimes, first degree residential burglary encompasses aiders and abettors. *See* Cal. Penal Code §§ 31, 971 (West 1985 & 1999) (providing equal culpability for traditional principals and traditional aiders and abettors). If, however, the California offense includes broader liability than its generic Guidelines counterpart, the two will not categorically match. *See Wenner*, 351 F.3d at 972 ("If the state statute criminalizes conduct that is not a crime of violence under [the Guidelines], then [the] conviction is not a categorical match.").

"In the course of the 20th century, . . . American jurisdictions eliminated the distinction" between first-degree principals, second-degree principals, and accessories before the fact. *Duenas-Alvarez*, 549 U.S. at ___, 127 S. Ct. at 820 (citing *Standefer v. United States*, 447 U.S. 10, 16-19 (1980); *Nye & Nissen v. United States*, 336 U.S. 613, 618 (1949)). Most states recognize, however, that a person who first becomes involved with a crime after its completion cannot be considered a principal or aider and abettor, but may instead qualify for a less-culpable status whose title varies among states (e.g., "accessory after the fact" or "obstructor" of justice). *See id.* (recognizing that an accessory after the fact is the only category of liability that remains separate from the others); 1 Charles E. Torcia, *Wharton's Criminal Law* § 35 (15th ed. 2006). Most states also recognize that, assuming all other elements are met, burglary is completed upon the perpetrator's entry. *See* 3 Charles E. Torcia, *Wharton's Criminal Law* § 324 (15th ed. 2006). Therefore, generically, an aider and abettor to burglary must be involved prior to or contemporaneous with the perpetrator's entry, whereas a person who first becomes involved afterwards constitutes an accessory after the fact or the like.

**[5]** California follows the typical rule that a person who first becomes involved with a crime after its completion can-

not be considered an aider and abettor, but may instead qualify for the less-culpable status of accessory after the fact. *See People v. Montoya*, 874 P.2d 903, 909-10 & n.7 (Cal. 1994) (quoting *People v. Cooper*, 811 P.2d 742 (Cal. 1991)) (additional citations omitted). Prior to *Montoya*, California also followed the typical rule that burglary is completed upon the perpetrator's entry. *See People v. Farley*, 53 Cal. Rptr. 2d 702, 709 (Cal. Ct. App. 1996). With *Montoya*, however, the California Supreme Court broadened the duration of the crime of burglary beyond entry. The court held that "for the purpose of assessing the liability of an aider and abettor, a burglary is considered ongoing during the time the perpetrator remains inside the structure . . . ." *Montoya*, 874 P.2d at 913. The court explained that

> if an individual happens upon a scene in which a perpetrator unlawfully has entered with intent to commit a felony or theft, and, upon learning of that circumstance, forms the intent to facilitate the perpetrator's illegal purpose in entering, that individual incurs the liability of an aider and abettor, commensurate with the liability of the perpetrator.

*Id.*

Before *Montoya*, the "individual" described in the above excerpt (the one who "happens upon a scene") would have been guilty only as an accessory after the fact to burglary, not as an aider and abettor. *See Farley*, 53 Cal. Rptr. 2d at 708 ("[U]nder pre-*Montoya* law, defendant's version of events, if believed, rendered him liable for . . . being an accessory to burglary. . . . [U]nder *Montoya*, the same conduct rendered him liable as a principal for first degree burglary."). With *Montoya*, California's liability for aiding and abetting burglary became broader than its generic counterpart in the Guidelines by encompassing what would generically be liability for acting as an accessory after the fact.

**[6]** Nevertheless, this may not preclude determining that residential burglary under California law is categorically congruent with generic burglary of a dwelling. The vehicle theft statute considered by the Supreme Court in *Duenas-Alvarez* included liability for " 'an accessory,' " but the Court still concluded that the California crime of vehicle theft categorically constituted a generic theft crime. *Duenas-Alvarez*, 549 U.S. at ___, 127 S. Ct. at 819-20 (quoting Cal. Veh. Code Ann. § 10851(a) (West 2000)); *see* Cal. Penal Code § 32 (West 1999) (defining "accessory" as a "person who, *after* a felony has been committed, harbors, conceals or aids a principal in such felony") (emphasis added). This was true, despite the Court's recognition of the fact than an accessory after the fact is the only category of criminal liability still distinct from principal criminal liability. *Duenas-Alvarez*, 549 U.S. at ___, 127 S. Ct. at 820. This issue need not be decided, however, because another aspect of California's first degree residential burglary statute makes it broader than generic burglary of a dwelling: the California statute does not require that the entry be "unlawful or unprivileged." *Rodriguez-Rodriguez*, 393 F.3d at 857. Consequently, a California conviction for first degree residential burglary cannot categorically constitute a conviction for the generic Guidelines offense of burglary of a dwelling.

## C.   *Modified Categorical Approach*

**[7]** In the absence of a categorical match, we next consider whether certain documents in the record or judicially noticeable facts show that Aguila-Montes's prior California conviction constituted generic burglary of a dwelling under the Guidelines.[2] Because Aguila-Montes's prior California con-

---

[2]In a recent *en banc* decision of our court, we declined to apply a modified categorical approach because the crime of conviction lacked an element of the general crime. *United States v. Navarro-Lopez*, 503 F.3d 1063, 1073 (9th Cir. 2007) (holding that "[t]he crime of conviction can never be narrowed to conform to the generic crime because the jury is not required

viction resulted from a guilty plea, we must determine whether he necessarily pleaded guilty to all elements of the generic Guidelines offense. *See Shepard*, 544 U.S. at 26 (phrasing the inquiry as "whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense"). As stated above, generic burglary of a dwelling under the Guidelines requires the unlawful or unprivileged entry into, or remaining in, a building or other structure that is a dwelling, with intent to commit a crime.

[8] In the present case, the California court's Certificate and Order of Magistrate establishes that Aguila-Montes was read the complaint charging him with first degree residential burglary and he pleaded guilty to that offense as charged in that document. The state court judge certified that Aguila-Montes and counsel "appeared before [the judge] in open court; [the judge] read the said complaint to said defendant; and that [the judge] then asked the said defendant whether he pleaded guilty to the offense(s) charged in said complaint. . . . [T]he said defendant pleaded guilty to the following offense(s) *charged in said complaint*, to wit: Burglary, in violation of section 459, Penal Code, a felony." (emphasis added). Because Aguila-Montes was read the complaint and pleaded guilty to the offense charged in that document, he admitted to the allegations against him in the complaint.[3] Those allegations are:

---

— as *Taylor* mandates — to find all the elements of the generic crime."). Here, by contrast, both the crime of conviction and the generic crime have the same basic elements. *Compare People v. Davis*, 958 P.2d 1083 (Cal. 1998) (citing Cal. Pen. Code § 459) (describing California statutory burglary as (1) entry, (2) into any building or other listed structure (3) with intent to commit larceny or any felony), *with Shepard*, 544 U.S. at 29 (citing *Taylor*, 495 U.S. at 598-99) (describing "three elements" of "generic" burglary). However, as discussed above, generic burglary also requires that the entry be "unlawful or unprivileged." *Shepard*, 544 U.S. at 29. This does not, however, create an additional element, but merely describes one type of entry among many possible entries, including unprivileged, forcible and unauthorized entries.

[3]In another recent *en banc* decision of our court, the defendant Vidal did not plead guilty "as charged." *United States v. Vidal*, 504 F.3d 1072, 1087

On or about January 4, 1988, in the county of Los Angeles, the crime of RESIDENTIAL BUR-GLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by GUILLERMO AGUILA, who did willfully and unlawfully enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Jacinto Padilla, with the intent to commit larceny and any felony. It is further alleged that the above offense is a serious felony within the meaning of Penal Code Section 1192.7(c)(18). It is further alleged that the above offense is a violation of Penal Code Section 462(a).

We have long held that a defendant who pleads guilty to a count admits all facts alleged therein. *See, e.g.*, *Rodriguez-Rodriguez*, 393 F.3d at 857-58; *United States v. Velasco-Medina*, 305 F.3d 839, 852 (9th Cir. 2002) (citing *United States v. Broce*, 488 U.S. 563, 570 (1988)); *United States v. Harris*, 108 F.3d 1107, 1109 (9th Cir. 1997); *United States v. Mathews*, 833 F.2d 161, 164 (9th Cir. 1987)).

**[9]** It is therefore appropriate to accord Aguila-Montes's guilty plea its plain meaning. The count to which he pleaded guilty is phrased exclusively in terms of Aguila-Montes's

(9th Cir. 2007). As a result, our en banc court had "no way of knowing what conduct Vidal admitted when he pled guilty to conduct that was not identical to that charged in Count One of the Complaint." *Id.* at 1088. Here, by contrast, the Certificate and Order of Magistrate establishes that Aguila-Montes was read the complaint and pleaded guilty to the offense charged in that document. We place no significance on the absence of the word "as" in the relevant language of the Certificate and Order of Magistrate. The Certificate states that the defendant pleaded guilty to the "following offense(s) charged in said complaint." Even though that Certificate does not use what the *Vidal* en banc court referred to as "the critical phrase '*as* charged in the Information,' " *id.* at 1087 (emphasis added), the Certificate specifically states that the charge in the complaint was read to Aguila-Montes and he pleaded guilty to it. That is sufficient.

activity as a principal (i.e., "GUILLERMO AGUILA, who did willfully and unlawfully enter"). By pleading guilty to that count, Aguila-Montes admitted to having engaged in the activity described in that document. Thus, he admitted to "willfully and unlawfully enter[ing] an inhabited dwelling house . . . with the intent to commit larceny and any felony."[4] This reveals that his entry was unlawful, that he entered a dwelling house, and that he did so with the intent to commit larceny or another felony. This satisfies the generic definition of burglary of a dwelling described as a crime of violence under section 2L1.2(b)(1)(A) of the Guidelines.

[10] Moreover, the complaint does not simply recite the language of the statute. It also includes additional factual allegations, including "On or about January 4, 1988, in the county of Los Angeles . . . GUILLERMO AGUILA [our Aguila-Montes] . . . unlawfully enter[ed] . . . [a] trailer coach and inhabited portion of a building occupied by Jacinto Padilla . . . ." This is sufficient to overcome our *en banc* court's admonition in *Vidal* that "an indictment that merely recites the language of the statute . . . is insufficient to establish the offense as generic for purposes of a modified categorical analysis." *Vidal*, 504 F.3d at 1088.

We are satisfied that the record in this case discloses that Aguila-Montes pleaded guilty to conduct that is narrow enough to fit within the Guidelines' "generic" definition of burglary. As a result, Aguila-Montes's California predicate conviction of first degree residential burglary matches the generic offense under the Guidelines.

---

[4]"When a defendant pleads guilty . . . to facts stated in the conjunctive, each factual allegation is taken as true." *United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995) (citing *Mathews*, 833 F.2d at 164). The count in Aguila-Montes's complaint to which he pleaded guilty stated that he entered "an inhabited dwelling house and trailer coach and inhabited portion of a building . . . ." Therefore, Aguila-Montes admitted to entering not only a dwelling house, but also a trailer coach and the inhabited portion of a building.

### *III.    Conclusion*

Because California does not require that entry in the burglary context be "unlawful or unprivileged," California's first degree residential burglary statute is broader than the generic definition of burglary of a dwelling incorporated into the Guidelines. Nonetheless, using the modified categorical approach, we conclude that Aguila-Montes specifically admitted to the precise conduct described in count one of the complaint to which he pleaded guilty. That accusatory pleading specifically described every element of the Guidelines' generic definition of burglary of a dwelling. Therefore, Aguila-Montes's state conviction of first degree residential burglary is a prior conviction of a crime of violence under section 2L1.2(b)(1)(A) of the Guidelines, and the district court properly applied the sixteen-level sentence enhancement.

**AFFIRMED.**